JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
hey, inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Ex Parte Application of<br><br>hey, inc.,<br><br>                      Applicant. | Case No:<br><br>**EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 USC. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING AND MEMORANDUM IN SUPPORT** |

Applicant, hey, inc. ("Applicant"), a Japanese corporation, hereby applies to this Court ex parte for an order permitting discovery from Twitter, Inc ("Twitter") for use in a court proceeding in Japan pursuant to 28 USC. § 1782.

The proposed subpoena attached to this application seeks from Twitter documents and information relating to certain Twitter accounts ("Subject Accounts") through which certain anonymous statements were made and such statements, under Japanese law, constitute defamation and unlawful business interference against Applicant.

This application is supported by the accompanying declaration of Yuichi Nakazawa ("Nakazawa Decl."), an attorney in Japan who represents Applicant in connection with an anticipated lawsuit in Japan against those who made the unlawful statements, and declaration of Ryosuke Togi ("Togi Decl."), an attorney also licensed in Japan to provide his opinion to

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

assist this Court in determining the scope of access logs reasonably required to identify anonymous perpetrators by using access logs.

I.   **BACKGROUND**

Applicant is a growing start-up company established in 2012, planning, developing and operating internet business. Mr. Yusuke Sato ("Mr. Sato") is the Applicant's current CEO, and Mr. Yusuke Mitsumoto ("Mr. Mistsumoto") is the Applicant's ex-CEO. Nakazawa Decl. ¶ 4.

On September 10, 2021, an unknown individual under Twitter name of ベギラマくん @cogitopp[1] ("begirama-kun @cogitopp" in English; "Subject Account 1") tweeted[2] that the top of "Company H" had sexual relationship with multiple employees of the company and his former company "Frea○Out" ("Subject Tweet 1"). Nakazawa Decl. ¶ 5. There were no such facts to which the Subject Tweet 1 referred. *Id.* The Subject Tweet 1 was retweeted[3] by another Twitter user under the name of MILK@mlnk901[4] ("Subject Account 2"), with an additional statement referring to "Company H" and "a tequila incident." *Id.* In Japan, the "tequila incident" was a notable event that Mr. Mitsumoto, the Applicant's ex-CEO, played a "tequila game" with a female in Tokyo, whose condition suddenly changed thereafter, and she was rushed to the hospital where she died[5]. *Id.* Further, Mr. Sato was co-founder of FreakOut, inc. (currently known as "FreakOut Holdings, inc."). By mentioning "tequila incident," the company name "H," which is the initial of the Applicant's company name, the word "Frea○Out," which implies FreakOut and therefor refers to FreakOut Holdings, inc., and the fact that the current CEO of Company H was co-founder of the "Frea○Out," it is clear that these defamatory tweets referred to Applicant. *Id.* On the same day, in response to a reply to the

---

[1] https://twitter.com/cogitopp

[2] https://twitter.com/cogitopp/status/1436100450172891159?s=20

[3] https://twitter.com/mlnk901/status/1436055927665283079

[4] https://twitter.com/mlnk901

[5] https://www.dailyshincho.jp/article/2020/12101407/

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

Subject Tweet 1, the Subject Account 1 tweeted[6] that such fact is known to the employees of "Company F" and "Company H," and he was particularly aggressive ("Subject Tweet 2"). *Id.* The factual statements provided in the Subject Tweet 1 and Subject Tweet 2 are false and defamatory.

In addition, on September 26, 2021, the Subject Account 2, citing a press release announcing that Bain Capital, LP had invested in Applicant, tweeted[7] that a person who decided the investment lacked common sense to judge between right and wrong ("Subject Tweet 3"). *Id.* at ¶ 6.

Further, on October 27, 2021, another Twitter user under the name of アサダアキラサンチーム（ビジパ専門家）｜令3年2月〜12月「スタートア… @DJ_AsadaAkira ("asada-akira-san-team (bijipa-professional) | from February to December of 2021 "Start U...@DJ_AsadaAkira" in English)[8] tweeted[9] that, by referring to the names of Mr. Mitsumoto and Mr. Sato, their entrepreneurship embracing unethical and law-evading spirits should be criticized, in other words, they lack ethical standard and do not mind breaking the law ("Subject Tweet 4"). *Id.* at ¶ 7.

According to Yuichi Nakazawa, Applicant's Japanese attorney, the Subject Tweet 1, Subject Tweet 2, Subject Tweet 3 and Subject Tweet 4 (collectively "Subject Tweets") were tweeted for harassment purpose, and constitute defamation and unlawful business interference against Applicant under Japanese Civil Code 709[10] [11]. Nakazawa Decl. ¶ 10.

---

[6] https://twitter.com/cogitopp/status/1436110462949617669

[7] https://twitter.com/mlnk901/status/1442025131501449219?s=20

[8] https://twitter.com/DJ_AsadaAkira

[9] https://twitter.com/dj_asadaakira/status/1453353635027423238?s=21

[10] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089

[11] http://www.japaneselawtranslation.go.jp/law/detail/?id=2057&vm=&re

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

Therefore, Applicant intends to bring a lawsuit in Japan against the person(s) associated with the Subject Account 1, Subject Account 2 and Subject Account 3 (collectively "Subject Accounts") as soon as the person(s)' identities have been ascertained through the discovery sought by this application. Nakazawa Decl. ¶ 11.

In order to identify the person(s) who committed unlawful acts against Applicant through the Subject Accounts, it is crucial for Applicant to obtain the information relating to the Subject Accounts. Nakazawa Decl. ¶ 12.

## II. ARGUMENT

### A. Legal Standard

An applicant seeking discovery for use in a foreign proceeding must demonstrate that (1) the person from whom the discovery is sought resides or is found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or any interested person. 28 USC. § 1782; *In re The Republic of Ecuador*, Case No. C-10-80225 MISC CRB (EMC), 2010 US Dist. LEXIS 102158 (N.D. Cal. Sept. 15, 2010) at*1.

In exercising its discretion under 28 USC. § 1782, a district court should further consider the following non-exhaustive factors: "(1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome." *In re Apple Inc.*, 2012 US Dist. LEXIS 66669, 3-4 (N.D. Cal. May 2, 2012) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 US 241, 264-265 (US 2004)).

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

B.  **Applicant's Application Meets All of the Statutory Requirements under 28 USC. § 1782.**

1. **Twitter From Whom Discovery Is Sought Is Located in This District.**

Twitter, from whom the discovery requested in this application is sought, is located in San Francisco, California[12][13]. Therefore, Twitter is within this Court's district.

2. **The Requested Discovery Is for Use in a Proceeding in Japan.**

The discovery requested in this application must be used in a proceeding before a foreign tribunal. The foreign proceeding needs not actually be under way before 28 USC § 1782 may be invoked. It is enough that such proceedings are "likely to occur" or are "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc., supra,* at 258-259 (quoting *In re Letter Request From Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 691 (DC Cir. 1989)).

Applicant intends to bring a lawsuit in Japan against the person(s) associated with the Subject Accounts as soon as the person's identity has been ascertained through the discovery sought by this application. Nakazawa Decl. ¶ 9. Thus, the requirement that the discovery be for use in a foreign proceeding is met.

3. **Applicant is Interested Party under 28 USC. § 1782, Who May Make This Application.**

The application to seek discovery pursuant to 28 USC. § 1782 may be made by "any interested person." As plaintiff in the anticipated litigation in Japan, Applicant is clearly an interested person under 28 USC. § 1782.

C.  **Applicant's Application Further Meets All of the Discretionary Factors under** *Intel*.

---

[12] https://investor.twitterinc.com/corporate-governance/contact-the-board-/default.aspx

[13] https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=03006676-30506312

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

**1.  Twitter Is Not Participant in the Foreign Proceeding.**

The first *Intel* factor asks whether the "person from whom discovery sought is a participant in the foreign proceeding." *Intel*, 542 US at 264.  If the person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id*. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.

Twitter is not a participant in the prospective Japanese lawsuit. Nakazawa Decl. ¶ 14. Additionally, the documents that Applicant seeks are located in the United States and not in Japan.  Thus, they are out of reach of the Japanese court's jurisdiction.

**2.  The Requested Information Is Crucial to Applicant's Bringing Lawsuit in Japan and the Japanese Courts Would Be Receptive to this Court's Assistance.**

"A court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance." *Intel.* at 264.

In order to identify the person who committed unlawful acts against Applicant through the Subject Accounts in question for purposes of bring a lawsuit against her in Japanese court, it is crucial for Applicant to obtain the information relevant to the Subject Accounts. Nakazawa Decl. ¶ 10.  Japanese law does not allow "John Doe defendant" in civil litigation, and a plaintiff must state names and physical addresses of the all parties in the complaint. Article 2 (1) of Rules of Civil Procedure (Rules of the Supreme Court of Japan No. 5 of 1996 ). *Id.* at ¶ 11.  Therefore, without first obtaining the information about the Subject Accounts, Applicant may not even start a litigation. *Id.*

In addition, the Japanese courts would be receptive to this court's assistance. In fact, the Japanese courts have been receptive to the discovery assistance made by the US courts.

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

*Marubeni Am. Corp. v. LBA YK*, 335 Fed. Appx. 95, 97-98, 2009 US App. LEXIS 12953, *7-8 (2d Cir. NY. 2009); *In re Application of LG Elecs. Deutschland GMBH*, 2012 US Dist. LEXIS 70570, *5, 2012 WL 1836283 (S.D. Cal. May 21, 2012).

### 3. Applicant's Discovery Request Is Not an Attempt to Circumvent Foreign Proof Restrictions or Policies.

"A district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel.* at 265.

Applicant is not aware of any restrictions imposed by or any policies under Japanese law limiting the proof-gathering proceeding in the manner proposed and for the purposes stated herein. Nakazawa Decl. ¶ 15. In the past, courts have granted 28 USC. § 1782 applications for the use in the proceedings in Japan, both civil and criminal, as well. *Marubeni Am. Corp.* at 98; *LG Elecs. Deutschland GMBH*, *5; *Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)*, 16 F.3d 1016, 1018-1019, 1994 US App. LEXIS 2440, *3-6, 94 Cal. Daily Op. Service 1108, 94 Daily Journal DAR 1918, 28 Fed. R. Serv. 3d (Callaghan) 200 (9th Cir. Cal. 1994).

### 4. Applicant's Request Is Narrowly Tailored to Highly Relevant Information and Not Unduly Intrusive or Burdensome.

"Unduly intrusive or burdensome requests may be rejected or trimmed." *Intel.* at 265.

As shown in the proposed subpoena to Twitter attached to the proposed order submitted with this application, the discovery requested by Applicant is narrowly tailored and limited to the discovery materials related to the Subject Accounts through which the identity of the defendant(s) to the anticipated Japanese lawsuit could be ascertained and nothing further.

First, the proposed subpoena does not seek disclosure of the content of any communications associated with the Subject Accounts. *Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.,* Case No. C 12-80242 EJD (PSG), 2013 WL 256771 (discussing prohibitions of Stored Communications Act, 18 USC § 2701 et seq).

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

Second, the proposed subpoena only seeks disclosure of names and addresses of the person(s) whose credit card is associated with each of the Subject Accounts. It does not seek disclosure of credit card numbers or any other sensitive information. *In re Medical Corporation H&S*, Case No. 5:19-mc-80058-VKD, ND. Cal. May 15, 2019 (admitted that applicant seeks disclosure of name and address of credit card holder registered on Google Account).

However, it is highly unlikely that the perpetrators have provided their true name and address to Twitter. Thus, the names and addresses Twitter may have on file in connection with the Subject Accounts, even if they are disclosed in response to the proposed subpoena, would be fictitious with high probability and would not help Applicant identify the perpetrators. In such case, an access log is the only available information that could identify the perpetrators. See Togi Decl. ¶ 8. *In re Kiki. Co., Ltd.*, Case No. 19-mc-80048-NC, ND. Cal. February 25, 2019. *In re Med. Corp. H&S* (N.D.Cal. Mar. 15, 2019, No. 19-mc-80058-VKD) 2019 U.S.Dist.LEXIS 42926. *Med. Corp. H&S v. Defendant* (N.D.Cal. May 30, 2019, No. 19-mc-80107-SVK) 2019 U.S.Dist.LEXIS 90977. *M&S LLC v. M&S LLC* (N.D.Cal. Aug. 19, 2019, No. 19-mc-80168-DMR) 2019 U.S.Dist.LEXIS 140311. *In re Exparte Med. Corp. H&S* (N.D.Cal. Aug. 21, 2019, No. 19-mc-80186-VKD) 2019 U.S.Dist.LEXIS 142289. (all orders above admitted that applicant seeks disclosure of access logs.)

The access logs at the time of the tweeting and login history just before the tweeting should be allowed because there is a possibility that these logs remain available and have not been deleted yet, even though they were recorded more than 6 months ago. *Id* [[S]ome providers keep access logs for more than 6 months].

However, these logs alone, assuming it fortunately exists, may be incomplete or insufficient to identify the perpetrators. *Id*. In addition, in case that the perpetrators used special tools for anonymization such as Tor (The Onion Router), the access log at the time of tweeting would not reveal sufficient information for identifying. *Id*. From Twitter's perspective, it is neither unduly intrusive nor burdensome to disclosure *all* access logs, in lieu of the log at the time of tweeting. Providers such as Twitter routinely delete old access logs

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

and keep only fresh access logs for the most recent several months. In fact, it is more burdensome for Twitter to have to search for the particular access log containing all the information necessary to identify the perpetrators.

Furthermore, access logs themselves contain no substantial private information of the Subject Accounts. Access logs only disclose time stamps (showing when the Subject Accounts holders accessed) and IP addresses. Any other substantial private information (e.g. information about what websites the holders may have accessed, what action they took, etc.) is not disclosed. See Togi Decl. ¶ 8.

The Court concluded that if the foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant: (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information. *In re Jommi*, 2013 US Dist. LEXIS 163201, 2013 WL 6058201 9.

Applicant seeks the identity of the person(s) who tweeted the Subject Tweets on the Subject Accounts and has identified the Subject Tweets by their account names (satisfied requirement (1)). Yuichi Nakazawa, Applicant's Japanese attorney, took steps to identify the author and his search revealed the server of the person(s) who tweeted the Subject Tweets is with Twitter. Nakazawa Decl. ¶ 14. Additionally, since Japanese law does not allow "John Doe defendant" in civil litigation, without first obtaining the information about the Subject Accounts, Applicant may not even start a litigation (satisfied requirement (2)). *Id.* at ¶ 13. Applicant's proposed subpoena is narrowly tailored to seek IP addresses and the information likely to identify the author of the Subject Tweets and does not seek the content of any communication (satisfied requirement (4)).

"Falsely charging a person with a . . . violation of the 'confidence reposed in him' is per se defamatory." *In re Yuichiro Yasuda*, 2019 U.S. Dist. LEXIS 174001, *9-10 (N.D. Cal. October 7, 2019). The Subject Tweet 1 and Subject Tweet 2 referred to false facts that the

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

Applicant's CEO had sexual relationship immorally with multiple employees. These statements constitute defamation in both California and Japan. Nakazawa Decl. ¶ 5, 8; *In re Yuichiro Yasuda*, 2020 U.S. Dist. LEXIS 26242, *5 (N.D. Cal. February 14, 2020). In Japan, not only a false statement of fact, but also an opinion or commentary may constitute defamation, if such opinion or commentary diminishes the objective social evaluation of a person's character, morality, reputation, trustworthiness, or other personal values. Nakazawa Decl. ¶ 9. The statements made in Subject Tweet 3 and Subject Tweet 4 are also sufficient to constitute defamation as they diminish the objective social evaluation of the Applicant's morality, reputation and trustworthiness. *Id.* Therefore, the Subject Tweets constitute defamation and unlawful business interference against Applicant under Japanese Civil Code 709[14] [15], and Applicant's action can withstand a motion to dismiss. *Id.* at 10 (satisfied requirement (3)).

## 5. Applicant's Request Is Not Unduly Intrusive or Burdensome Because the Subject Tweets Are Pure Fighting Words and Obscenity

Pure "fighting words and obscenity," is not protected by the First Amendment at all. *Chaplinsky v. NH*, 315 US 568, 62 S. Ct. 766, 86 L. Ed. 1031, 1942 US LEXIS 851. In Chaplinsky, the court concluded that fighting words and obscenity is defined as what men of common intelligence would understand would be words likely to cause an average addressee to fight. *Id* at 573. Considering the there are no facts whatsoever that the Subject Tweet 1 and the Subject Tweet 2 refer, the person who tweeted the Subject Tweet 1 and Subject Tweet 2 intended to attack the personality of Applicant's CEO and instill his bad reputation into people by tweeting that Applicant's CEO had a physical relationship with the employees without any justification. Nakazawa Decl. ¶ 5. Considering there is a strong nexus between the Applicant and Mr. Sato's reputation, Subject Tweet 1 and Subject Tweet 2 are also

---

[14] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089

[15] http://www.japaneselawtranslation.go.jp/law/detail/?id=2057&vm=&re

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support

directed toward Applicant. Id. ¶ 8. In addition, the person intended to enhance the truthfulness of the statement by pretending that the statement was based on the fact heard directly from employees of Applicant, the statement was malicious. The person(s) who tweeted the Subject Tweet 3 and Subject Tweet 4 intended only to discredit Applicant's morality, reputation and trustworthiness. Therefore, the Subject Tweets should be understood as what men of common intelligence would understand would be words likely to cause an average addressee to fight.

In conclusion, Applicant's request is narrowly tailored to highly relevant information and not unduly intrusive or burdensome even though considering First Amendment.

## III. CONCLUSION

For the reasons stated above, Applicant respectfully requests that this Court grant this application and permit that it issues the subpoena to Twitter attached to the proposed order submitted with this application.

Dated: January 29, 2022

Respectfully submitted,

MARSHALL SUZUKI LAW GROUP, LLP

By: _____
Junji Suzuki
Attorney for Applicant,
hey, inc.

**In re Ex Parte Application of hey, inc.**

Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Memorandum in Support