Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Kim Y. Ng, Bar No. 335222
KNg@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: 650.838.4300
Facsimile:  650.838.4350

Jasmine W. Wetherell, Bar No. 288835
JWetherell@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile:  310.788.3399

Attorneys for Respondent
TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF HEY, INC.,<br><br>            Applicant. | Case No. 3:22-mc-80034-DMR<br><br>**TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED UNDER 28 U.S.C. § 1782**<br><br>Hearing Date: July 28, 2022<br>Time:            1:00 p.m.<br>Courtroom:    4, 3rd Floor<br>Judge:          Mag. Judge Donna M. Ryu |

## NOTICE OF MOTION AND MOTION TO QUASH

**PLEASE TAKE NOTICE** that on July 28, 2022 at 1:00 p.m. or as soon thereafter as this matter may be heard, in Courtroom 4, 3rd Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102[1], Respondent Twitter, Inc. ("Twitter") will, and hereby does, move to quash Applicant hey, inc.'s ("Applicant") subpoena to Twitter, served on Twitter on April 22, 2022, pursuant to 28 U.S.C. § 1782 (the "Subpoena"). Twitter brings this Motion pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires a court to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Julie E. Schwartz, the Declaration of Yutaro Kawabata, the Declaration of Chisa Fukudome, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Twitter respectfully requests that the Court quash the Subpoena because Applicant has not satisfied the First Amendment's requirements for unmasking anonymous speakers under the fourth factor set forth by *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") and because the Subpoena is an attempt to circumvent the policies of the United States under the third *Intel* factor.

Dated:  May 23, 2022                         **PERKINS COIE LLP**


                                             By: *s/Julie E. Schwartz*
                                             Julie E. Schwartz
                                             Jasmine W. Wetherell
                                             Kim Y. Ng

                                             Attorneys for Respondent
                                             TWITTER, INC.

---

[1] Per Judge Ryu's Scheduling Notes as of May 23, 2022, all hearings on civil motions are currently being held via Zoom video webinar.

# Table of Contents

**Page**

I.      INTRODUCTION ........................................................................................1

II.     STATEMENTS OF FACTS ........................................................................3

III.    LEGAL STANDARD .................................................................................5

IV.     ARGUMENT ..............................................................................................6

    A.    The Court Should Quash the Subpoena Under the Fourth *Intel* Factor
       Because it Does Not Survive First Amendment Scrutiny. ........................6

       1.    Applicant has not demonstrated a *prima facie* cause of action under
          Japanese law supported by evidence...........................................8

          a.    Tweets 1, 1A, 2 and 4 are not specific enough to support a
             claim for defamation. ....................................................9

          b.    None of the Tweets harm Applicant's reputation. ..........................10

             (i)    The Tweets do not impact Applicant's social
                reputation...................................................................11

             (ii)    Applicant has not rebutted any defenses to its
                defamation claim........................................................12

        2.    The balance of harms weighs in favor of the anonymous speaker. ............13

    B.    The Court Should Quash the Subpoena Under the Third *Intel* Factor
       Because Enforcement Would Punish Speech Protected in this Country. ...........14

       1.    The Tweets are not defamation under California law. ...............................15

          a.    Applicant may not bring a defamation claim on behalf of the
              CEO or ex-CEO of its business........................................16

          b.    Applicant has not demonstrated falsity. ...........................................17

          c.    The Tweets are protected opinion, not defamation. .........................18

          d.    Applicant has not shown that the statements were made with
              either actual malice or negligence...................................21

          e.    The Tweets are not "fighting words" or "obscenity.".....................22

       2.    The Subpoena should not be enforced to the extent it conflicts with
          United States law................................................................23

V.      OBJECTIONS TO EVIDENCE ................................................................24

    A.    Objections to Nakazawa Declaration .....................................................24

VI.     CONCLUSION .........................................................................................25

TWITTER'S NOTICE OF MOTION AND MOTION TO QUASH ISSUED UNDER 28 U.S.C. § 1782

**Table of Authorities**

Page(s)

CASES

*Art of Living Found. v. Does*,
    No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) ...........................19, 21

*Aurora World, Inc. v. Ty Inc.*,
    No. CV 09-08463 MMM (EX), 2010 WL 11506546 (C.D. Cal. Aug. 24, 2010) ...................17

*Austin v. Zhang*,
    No. 20-CV-05445-RS, 2022 WL 298573 (N.D. Cal. Feb. 1, 2022) ...........................13, 15, 17

*Bachchan v. India Abroad Publ. Inc.*,
    585 N.Y.S.2d 661 (N.Y. Sup. Ct. 1992) ...................................................................15

*Bank Melli Iran v. Pahlavi*,
    58 F.3d 1406 (9th Cir. 1995).....................................................................................18

*Barger v. Playboy Enterprises, Inc.*,
    564 F. Supp. 1151 (N.D.Cal.1983), *aff'd,* 732 F. 2d 164 (9th Cir. 1984)................................21

*Barthelemy v. Air Lines Pilots Ass'n*,
    897 F.2d 999 (9th Cir. 1990).....................................................................................18

*Bigelow v. Virginia*,
    421 U.S. 809 (1975)..................................................................................................14

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033, 728 P. 2d 1177 (1986) ...................................................................16

*Brandenburg v. Ohio*,
    395 U.S. 444 (1969)..................................................................................................23

*Buckley v. American Constitutional Law Foundation, Inc.*,
    525 U.S. 182 (1999)..................................................................................................13

*Church of Scientology of California v. Flynn*,
    744 F.2d 694 (9th Cir. 1984)....................................................................................16

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625 (2001) .................................................17

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009).....................................................................................19

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..................................................................................................21

*Glassdoor, Inc. v. Superior Court*,
    9 Cal. App. 5th 623, 215 Cal. Rptr. 3d 395 (2017)....................................................8

**Table of Authorities**

**Page(s)**

*Highfields Capital Mgmt., L.P. v. Doe,*
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................................... passim

*In re Anahara,*
  No. 22-MC-80063-JCS, 2022 WL 783896 (N.D. Cal. Mar. 15, 2022) ....................................15

*In re Anonymous Online Speakers,*
  661 F.3d 1168 (9th Cir. 2011).....................................................................................6, 13, 19

*In re Application of Ontario Principals' Council,*
  No. 2:13-MC-120-LKK-KJN, 2013 WL 6844545 (E.D. Cal. Dec. 23, 2013) ........................15

*In re Frontier Co., Ltd.,*
  No. 19-MC-80184-LB, 2019 WL 3345348 (N.D. Cal. July 25, 2019).....................................7

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et seq.,*
  706 F. Supp. 2d 11 (D.D.C. 2009) ......................................................................................8

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,*
  539 F.2d 1216 (9th Cir. 1976)..............................................................................................6

*In re Nagatsuki Ass'n,*
  No. 20-MC-80030-SVK, 2020 WL 887890 (N.D. Cal. Feb. 24, 2020) ...................................6

*In re PGS Home Co. Ltd.,*
  No. 19-MC-80139-JCS, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) ...........................7, 14

*In re Plan. & Dev. of Educ., Inc.,*
  No. 21-MC-80242-JCS, 2022 WL 228307 (N.D. Cal. Jan. 26, 2022)........................... passim

*In re Tagami,*
  No. 21-MC-80153-JCS, 2021 WL 5322711 (N.D. Cal. Nov. 16, 2021) ........................1, 2, 15

*In re Yasuda,*
  No. 19-MC-80156-TSH, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020)...............................8, 13

*Intel Corp. v. Advanced Micro Devices, Inc.,*
  542 U.S. 241 (2004) ...................................................................................................... passim

*Matusevitch v. Telnikoff,*
  877 F. Supp. 1 (D.D.C. 1995) ...........................................................................................15

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995)......................................................................................................13, 14

*Milkovich v. Lorain Journal Co.,*
  497 U.S. 1 (1990)................................................................................................................19

**Table of Authorities**

Page(s)

*Miller v. California,*
    413 U.S. 15 (1973) ......................................................................................................23

*Music Grp. Macao Comm. Offshore Ltd., v. Does,*
    82 F. Supp. 3d 979 (N.D. Cal. 2015) .........................................................................8, 14

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .........................................................................................2, 14, 15, 21

*Nicosia v. De Rooy,*
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) .......................................................................19

*Palm Springs Tennis Club v. Rangel,*
    73 Cal. App. 4th 1, 86 Cal. Rptr. 2d 73 (1999) .........................................................16

*Reader's Dig. Assn. v. Superior Ct.,*
    37 Cal. 3d 244, 600 P. 2d 610 (1984) .......................................................................21

*Reno v. American Civil Liberties Union,*
    521 U.S. 844 (1997) ....................................................................................................13

*Smythe v. Does,*
    No. 15-MC-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) ............................13

*Thunder Studios, Inc. v. Kazal,*
    13 F.4th 736 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, No. 21-
    1156, 2022 WL 1131404 (U.S. Apr. 18, 2022) .........................................................23

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.,*
    No. 21-MC-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) ...............1, 7

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) ........................................................................................19

*Unelko Corp. v. Rooney,*
    912 F.2d 1049 (9th Cir. 1990)..............................................................................17, 19

*Unsworth v. Musk,*
    No. 2:18-CV-08048-SVW-JC, 2019 WL 4543110 (C.D. Cal. May 10, 2019) ........19

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976).....................................................................................................23

*Washburn v. Wright,*
    261 Cal. App. 2d 789, 793, Cal. Rptr. 224 (1968)................................................16, 17

*Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton,*
    536 U.S. 150 (2002).....................................................................................................13

**Table of Authorities**

**Page(s)**

*Wirt v. Twitter, Inc.*,
   No. 21-MC-80166-JSC, 2021 WL 5919846 (N.D. Cal. Dec. 15, 2021)...................................22

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   169 F. Supp. 2d 1181 (N.D. Cal. 2001), *rev'd on other grounds*, 433 F.3d 1199
   (9th Cir. 2006).............................................................................................................15

**STATUTES**

28 U.S.C. § 1782 .................................................................................................... passim

**RULES**

Civil L.R. 7-3(a) ...........................................................................................................24

Fed. R. Civ. P. 26(d) ......................................................................................................7

Fed. R. Civ. P. 45(d)(3)(A)(iii) ......................................................................................5

Fed. R. Evid. 401 ....................................................................................................24, 25

Fed. R. Evid. 402 ....................................................................................................24, 25

Fed. R. Evid. 602 ....................................................................................................24, 25

Fed. R. Evid. 801 ..........................................................................................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN SUPPORT OF MOTION TO QUASH

**I.    INTRODUCTION**

The Court should quash the subpoena (the "Subpoena") to Twitter, Inc. ("Twitter") issued by hey, inc. ("Applicant") in this action under 28 U.S.C. § 1782 ("Section 1782").

Applicant brought this Section 1782 action to seek the Court's permission to issue a subpoena to Twitter for information to identify three Twitter account holders who engaged in anonymous speech on its platform. Dkt. 1 ("App."). Applicant intends to use the information to bring a lawsuit for defamation and unlawful business interference in Japan. *Id.* After analyzing the four discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Court granted issuance of the subpoena *ex parte*. Dkt. 3 ("Order"). The Court also recognized Twitter's right to challenge the subpoena by a motion to quash. *Id.* at 6 (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)).

Twitter moves to quash the Subpoena under two of the *Intel* factors:

***First***, under the fourth *Intel* factor, Twitter moves to quash the Subpoena as "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245-47. Under this factor, where anonymous speech is implicated in the Section 1782 context, a court "considers the First Amendment and the potential chilling effect that granting the request would have on anonymous speech." *In re Tagami*, No. 21-MC-80153-JCS, 2021 WL 5322711, at *4, n.2 (N.D. Cal. Nov. 16, 2021). In particular, a court not only reviews whether there is good cause for the subpoena, but also whether a litigant has presented evidence of "real harm" that outweighs the speaker's First Amendment rights. *See Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005) ("*Highfields*"); *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *4 (N.D. Cal. Sept. 9, 2021) (applying *Highfields* in a Section 1782 action). Thus, a litigant must establish a *prima facie* claim under the foreign law against the defendant and show the balancing of harms weighs in its favor. *Id.* at 970–71 (citation omitted).

This Court has not yet reviewed the Tweets under the *Highfields* standard. Applicant

1  cannot satisfy the first step of the *Highfields* test because Applicant has not demonstrated a *prima*

2  *facie* claim of defamation under Japanese law. *See* Declaration of Yutaro Kawabata ("Kawabata

3  Decl."). Applicant claims that the Tweets primarily discuss: (1) allegations that Yusuke Sato, the

4  CEO of Applicant, was aggressive and engaged in workplace relationships; and (2) Yusuke

5  Mitsumoto, the former CEO's character, and the "tequila incident," where he paid a hostess to

6  drink a bottle of tequila in under 15 minutes, and she died. App. at 2.

7        Under Japanese law, all but one of the Tweets suffer from a fatal lack of specificity.

8  Kawabata Decl. ¶¶ 13-21. Applicant is not identified in all but one of the Tweets, and connecting

9  the other Tweets to Applicant via its current and former employees (who are also not named in all

10  but one of the Tweets) requires an analytical leap. *Id.* ¶¶ 14-15, 19, 21. Even in the one Tweet

11  where Applicant is identified, the Tweet is abstract and merely conveys surprise that Bain Capital

12  invested in the company and opines doing so is a risk. *Id.* ¶ 19. Thus, there is no evidence of "real

13  harm" before the Court. *Id.* ¶ 20. Moreover, Applicant has not rebutted, with competent evidence,

14  that the statements are of the public interest and for the public benefit, that they are true, or that

15  the Twitter account holders had proper reasons to believe they were true. *Id.* ¶¶ 23-24. This

16  precludes a finding of defamation under Japanese law. *Id.* ¶ 25. Finally, under the second step of

17  the *Highfields* test, the balance of harms weighs heavily in favor of protecting anonymous online

18  speech because Applicant has demonstrated no "real harm" to it whatsoever.

19        ***Second***, under the third *Intel* factor, Twitter moves to quash the Subpoena as an attempt to

20  circumvent the policies of the United States. 542 U.S. at 246-47; *New York Times Co. v. Sullivan*,

21  376 U.S. 254, 270 (1964) (There is a "a profound national commitment to the principle that

22  debate on public issues should be uninhibited, robust, and wide-open"). While there is little

23  authority applying this factor in the context of a foreign defamation lawsuit, at least two decisions

24  have considered whether the speech at issue would be protected by the First Amendment in the

25  United States to determine whether this factor is satisfied. *In re Plan. & Dev. of Educ., Inc.*, No.

26  21-MC-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022); *In re Tagami*, 2021

27  WL 5322711, at *4, n.1.

28

The Court has not yet considered United States policy and whether the speech would be protected under its laws. Here, the speech is protected under California and United States law for a number of reasons. For one, Applicant lacks standing to bring a defamation claim on behalf of its current and former employees because the Tweets do not directly comment on Applicant's business or trade or its employees' performance of their official duties. And even if Applicant could, it has not introduced any competent evidence that the statements are false. In fact, Applicant does not maintain that two of the Tweets are false. Moreover, the Tweets are protected opinion regarding matters of public interest. Lastly, Applicant, a public figure, has not alleged actual malice or even the lower standard of negligence that applies to private figures.

Even assuming the speakers are not United States citizens who have rights under the U.S. Constitution, "the principles underlying the First Amendment may counsel a court of the United States against exercising its discretion to aid in punishing speech that would be protected in this country." *In re Plan. & Dev. of Educ., Inc.*, 2022 WL 228307, at *4 n.3 (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)). For this reason, to the extent that Japanese law conflicts with California law in a way that would allow unmasking of the Twitter account holders (such as by allowing individuals expressing opinions to be penalized), the Subpoena should not be enforced.

Accordingly, for these reasons, the Court should quash the Subpoena in its entirety.

## II.    STATEMENTS OF FACTS

Applicant is a Japanese startup company that intends to bring a defamation lawsuit in Japan. App. at 1, 4. According to Applicant, certain Twitter account holders who engaged in anonymous speech on Twitter's platform somehow defamed Applicant by discussing the moral fitness of unnamed individuals, which Applicant interprets to be the current and former CEOs of the company, Sato and Mitsumoto respectively. *Id.* 2-3. In addition, the account holders were discussing a matter involving Mitsumoto, which resulted in the death of a hostess based on a dangerous drinking game. *Id.* at 2.

The incident involving Mitsumoto is widely known in Japan as the "tequila incident." *See,*

*e.g.*, Jay Allen, *A "drinking game" in a high-end Tokyo bar that ended in a young woman's death has drawn attention to the abusive power wielded by rich men.*, Unseen Japan, Dec. 11, 2020, https://unseenjapan.com/tokyo-tequila-death-tragedy/ (last visited May 23, 2022). The "tequila incident" involved Mitsumoto playing a "tequila game" with a hostess that involved her drinking an entire bottle of tequila in 15 minutes in exchange for the equivalent of a thousand U.S. dollars. *See id.* He gave her a consolation prize for not accomplishing her task, which was the equivalent of $300. *Id.* The hostess died following the incident. *Id.*

Applicant is seeking identifying information to potentially unmask Twitter account holders, @cogitopp, @mlnk901, and @DJ_AsadaAkira (the "Accounts").[2] *Id.* at 6. There appear to be five Tweets at issue from three Accounts, although Applicant labels the Tweets as Tweets 1 through 4[3]:

### Tweet 1 (@cogitopp) (Retweeting Tweet 1A):

> begirama-kun
> @cogitopp
> To begin with, the top of a certain company H has slept with so many employees back when he was at Frea○Out. And apparently, he hasn't changed even at the certain company H.
> I don't mind him playing around but it's inappropriate as a CEO to continue hitting on employees...

### Tweet 1A (@mlnk901):

> MILK @mlnk901 – September 10
> When a friend who works for a fund asked me about a certain company H, I told him there are some shady stuff lurking in multiple areas other than business potential and track record. He seemed to have decided not to be involved with the company after also personally feeling it risky. And the tequila incident happened sometime after that. I guess his decision turned out to be a good one.

---

[2]Specifically, the Subpoena seeks "all DOCUMENTS" identifying the account holders, showing names and addresses of credit card holders registered on the accounts, and all documents showing access logs of the accounts on the dates of the Tweets.

[3]Tweet 1 consists of two Tweets, not one Tweet. Twitter uses Applicant's labeling of Tweet 1 as the statement from @cogitopp, and uses "Tweet 1A" to refer to the statement from @mlnk901, which @cogitopp retweeted. Nakazawa Decl. at ¶¶ 13-15.

**Tweet 2 (@cogitopp):**

begirama-kun @cogitopp – September 10
I heard from employees at both a certain company F and a certain company H.
He was particularly aggressive when he was at the certain company F, and I think every employee knows.

**Tweet 3 (@mlnk901):**

MILK
@mlnk901
My impression of Ba◯n Capital is that they are a group of super-talented people and post excellent results,
but I don't understand why they would invest on hey while being aware of the risks. I know my
acquaintances must be very intelligent and have enough common sense to judge between wight and wrong,
but apparently there seem to be someone not like that.

**Tweet 4 (@DJ_AsadaAkira):**

To Mr. Kentaro Kawabe, Z Holdings (@dennotai),
I believe entrepreneurship embracing unethical and law-evading spirits such as Yusuke Mitsumoto and
supporters like Anri Samata and Yusuke Sato in the entrepreneurial community should be criticized first
to purge out from the community before making political statements. What do you think?

10:31 p.m. – October 27, 2021 – Twitter Web App

On April 22, 2022, Twitter was served with the Subpoena and Order. Declaration of Julie E. Schwartz in Support of Motion to Quash ("Schwartz Decl."), ¶ 2, Ex. A. The Order authorizes issuance of the Subpoena, but it recognizes Twitter's due process right to challenge the Subpoena via a motion to quash. Order at 6. Twitter timely objected to the Subpoena on May 6, 2022 and informed counsel of its intent to move to quash. Schwartz Decl. ¶ 3, Ex. B.

Because the Subpoena does not satisfy the relevant *Intel* factors, Twitter brings this Motion to Quash.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Also, in Section 1782 actions, the following factors govern whether a subpoena

should be issued (or should have been issued): (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 246–47.

The Court has already issued the Subpoena, finding the *Intel* factors met. *See* Order. However, as this Court recognized, because Section 1782 applications are typically adjudicated *ex parte*, subpoena respondents may challenge a court's findings regarding the *Intel* factors via a motion to quash. *In re Nagatsuki Ass'n*, No. 20-MC-80030-SVK, 2020 WL 887890, at *2 (N.D. Cal. Feb. 24, 2020). As a result, "the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *Id.* (quotation omitted); *see also In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d at 1219 (holding that the subpoenaed parties may object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order on an *ex parte* basis).

## IV.   ARGUMENT

### A.   The Court Should Quash the Subpoena Under the Fourth *Intel* Factor Because it Does Not Survive First Amendment Scrutiny.

Anonymous online speech is protected by the First Amendment to the United States Constitution. The Ninth Circuit has recognized that, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation …[or] concern about social ostracism'." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

This protection applies in the context of Section 1782 applications when a foreign civil

litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts. Specifically, where a Section 1782 implicates anonymous speech, courts are required to engage in a First Amendment analysis in order to determine whether the request is unduly intrusive or burdensome under the fourth *Intel* factor. *See, e.g.*, *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (granting motion to quash a subpoena seeking to identify anonymous Twitter account holders because plaintiff's subpoena was "unduly burdensome under *Intel*").

Courts have held that, because Section 1782 actions are evaluated in the context of the Federal Rules of Civil Procedure, foreign litigants must demonstrate good cause under Federal Rule of Civil Procedure 26(d) for the subpoena using the following factors, which considers whether the applicant:

> (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.

*In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019) (citing *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013)).

However, demonstrating that a subpoena could survive a motion to dismiss is not enough in the context of anonymous speech. Instead, anonymous speech implicates the *Highfields* test, which requires a court to "'go beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate.'" *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (applying *Highfields* in a Section 1782 action); *In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *1 (N.D. Cal. Nov. 25, 2019) (citing *Highfields*, 385 F. Supp. 2d at 975) (imposing a higher evidentiary standard under *Highfields* in a Section 1782 action because "[t]he standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests.").

Under the first step of the *Highfields* test, a litigant must first demonstrate a *prima facie* cause of action supported by *competent* evidence. *Music Grp. Macao Comm. Offshore Ltd., v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76). Allegation and speculation are insufficient. *Id.* (original emphasis). If "any essential fact or finding lacks the requisite evidentiary support," a court may not enforce the subpoena. *Id.* at 976.

Even if a plaintiff satisfies the first step of *Highfields*, a court must still weigh the harm that would be caused to the plaintiff and defendant's interests, should the court order disclosure of the defendant's identity. *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *6 (N.D. Cal. Feb. 14, 2020). Absent satisfaction of both steps of the *Highfields* test, the plaintiff cannot discover the anonymous speaker's identity. *See Music Grp. Macao*, 82 F. Supp. 3d at 985-87.

As explained below, Applicant falls well-short of satisfying the requisite First Amendment standards under both steps of the *Highfields* test.[4]

### 1. Applicant has not demonstrated a *prima facie* cause of action under Japanese law supported by evidence.

Applicant has not made a *prima facie* claim of defamation under Japanese law.[5]

---

[4]Twitter has standing to raise First Amendment objections on behalf of its account holders. *See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et seq.*, 706 F. Supp. 2d 11, 17 n.3 (D.D.C. 2009) (company had standing to bring First Amendment challenge on behalf of its customers) (citing *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392–393 (1988); *see also Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 629, 215 Cal. Rptr. 3d 395, 401 (2017) (company may "assert the First Amendment interests of [its] anonymous contributors in maintaining anonymity.").

[5]Nor has Applicant established a claim for unlawful business interference. Under Japanese law, to claim tort liability under Article 709 for unlawful business interference due to defamatory statements, the plaintiff must demonstrate that the four requirements have been met. *Id.* ¶ 7. In particular, the plaintiff must establish that its business has incurred loss as a result of the statements, such as loss of customers and other actual harm to the business. *Id.* ¶ 10. Moreover, even if a certain statement is admitted to constitute defamation, the same statement is not always found to constitute unlawful business interference. *Id.* ¶ 10 (citing 東京地方裁判所 [Tokyo District Court] Feb. 27, 2006 (Japan), 大阪地方裁判所 [Osaka District Court] Nov. 16, 2017 (Japan)). Applicant's claim that the Tweets interfered with its business does not withstand scrutiny because it has not substantiated how its business was affected by the Tweets; how its business was damaged as a result of the Tweets; and what is the causal link between the Tweets and damages to its business. *Id.* ¶ 25. Thus, the Applicant has not provided any information in its Application that demonstrates that the four requirements to find tort liability under Article 709 of

Generally, Article 709 of the Japanese Civil Code (Compensation for Loss or Damage in Torts) states that "[a] person that has intentionally or negligently infringed the rights or legally protected interests of another person is liable to compensate for damage resulting in consequence." Kawabata Decl. ¶ 6. The elements for tort liability under Article 709 of the Japanese Civil Code are: (1) the tortfeasor's act has infringed the victim's rights or interests protected by law; (2) the act is found to be unlawful; (3) damages; and (4) causation. *Id* ¶ 7.

### a. Tweets 1, 1A, 2 and 4 are not specific enough to support a claim for defamation.

Japanese courts consider whether the statement(s) are specific enough for an ordinary reader to identify that they are about the victim. *Id.*¶ 8. If the alleged defamatory statement(s) are not specific enough for an ordinary reader to identify that the statement concerns the plaintiff, the defamation claim will not survive. *Id.* (citing 東京地方裁判所 [Tokyo District Court] Aug. 4, 2016 (Japan), 東京地方裁判所 [Tokyo District Court] Jan. 19, 2017 (Japan)).[6]

Here, each of the statements at issue are not sufficiently specific to support a defamation claim under Japanese law for Tweets 1, 1A, 2 and 4. Tweet 1 is a retweet of Tweet 1A, and Tweet 2 is a reply tweet to Tweet 1. *Id.* ¶ 13. Thus, these Tweets should be read together to determine whether an ordinary reader could identify that they are about the Applicant and whether these Tweets harm the social reputation of the Applicant. *Id.*

Tweet 1A does not state the name of the Applicant, and the only statements in Tweet 1A that may identify who is being tweeted about are the words "certain company H" and "tequila incident". *Id.* ¶ 14. While the "tequila incident" was reported in the media, an ordinary reader would fail to sufficiently connect this incident and "certain company H" with Applicant, for the following reasons. *Id.* First, the "tequila incident" was the act of Mitsumoto, a wealthy individual, playing a "tequila game" with a hostess. *Id.* This has nothing to do with Applicant. *Id.* Indeed,

the Japanese Civil Code. *Id.* ¶¶ 10, 25 (citing See 東京地方裁判所 [Tokyo District Court] Feb. 27, 2006 (Japan), 大阪地方裁判所 [Osaka District Court] Nov. 16, 2017 (Japan)).

[6]Twitter has provided translations of relevant portions of Japanese authority attached to the Declaration of Chisa Fukudome.

Mitsumoto has numerous investments and company affiliations and is not uniquely associated with Applicant. *Id.* ¶ 14(b) (citation omitted). Moreover, Mitsumoto retired from Applicant around May 2020, and the "tequila incident" did not occur until November 27, 2020. *Id.* (citation omitted). The Tweet 1A does not explain how "certain company H" and the "tequila incident" are related, so an ordinary reader would not understand the Tweet to refer to Applicant.

Tweet 1 only states that the "CEO" or the "top of the certain company H" used to be at "Frea○Out", without any further detail. *Id.* ¶ 15. Even assuming the phrase omits a "k" sound, and "Frea○Out" refers to FreakOut, the FreakOut group had 459 employees as of September 30, 2021, with at least 5 companies having FreakOut in its corporate name. *Id.* (citation omitted). Therefore, an ordinary reader would not be able to identify who is referred to in this Tweet. *Id.* And without being able to identify who the "CEO" or the "top" is referring to, an ordinary reader cannot determine that "certain company H" refers to the Applicant. *Id.* Therefore, even taking Tweet 1A and Tweet 1 together, an ordinary reader would not make a connection to Applicant. *Id.*

Because Tweet 2 is ancillary to these Tweets, it likewise does not have a sufficient connection to Applicant. *Id.* ¶¶ 16-17. Moreover, Tweet 4 does not name Applicant, so on its face, it is not connected to Applicant. *Id.* ¶ 21. Therefore, for these reasons alone, Applicant has not stated a prima facie claim of defamation for Tweets 1, 1A, 2, and 4.

**b.     None of the Tweets harm Applicant's reputation.**

Japanese courts consider whether the statement(s) harmed the victim's social reputation by assessing how the statement(s) would be received by an ordinary reader. *Id.* ¶ 8(b) (citing 最高裁判所 [Supreme Court] Jul. 20, 1956, 最高裁判所民事判例集10巻8号1059頁 [10 Supreme Court Reports (Civil Cases) 8 (1059)] (Japan), 東京地方裁判所 [Tokyo District Court] Dec. 3, 2013 (Japan)). Japanese courts have found abstract, non-particularized and unspecific statements directed against the plaintiff are not defamatory, because such statements cannot damage the social reputation of the plaintiff. *Id.* (citing 東京地方裁判所 [Tokyo District Court] Nov. 30, 2012 (Japan), 東京地方裁判所 [Tokyo District Court] Feb. 14, 2017 (Japan), 京地方裁判所

1    [Tokyo District Court] Dec. 7, 2017 (Japan)).

2          In addition, under Japanese law, the freedom to express opinions or criticism is important

3    because it provides a foundation for freedom of expression which is considered indispensable for

4    democratic society. *Id.* ¶ 8(c). Therefore, whether a statement of opinion or criticism, without

5    factual statements, harms one's reputation should be carefully evaluated. *Id.* (citing 最高裁判所

6    [Supreme Court] Jul. 15, 2004, 最高裁判所民事判例集58巻5号1615頁 [58 Supreme Court

7    Reports (Civil Cases) 5 (1615)] (Japan)).

8          Furthermore, a person will not be liable for harming another person's social reputation if:

9    (1) the matter is a matter of public interest; (2) the main purpose for making the expression was

10   for the benefit of the public; and (3) the facts presented (or the underlying facts of the opinion

11   provided) are true, or there are proper reasons to believe that they are true, as such statements,

12   even if defamatory, will not be found to be unlawful. *Id.* ¶ 9 (citing 最高裁判所 [Supreme Court]

13   Jun. 23, 1966, 最高裁判所民事判例集20巻5号1118頁 [20 Supreme Court Reports (Civil Cases)

14   5 (1118)] (Japan), 最高裁判所 [Supreme Court] Sep. 9, 1997, 最高裁判所民事判例集51巻8号

15   3804頁 [51 Supreme Court Reports (Civil Cases) 8 (3804)] (Japan)).

16                      **(i)      The Tweets do not impact Applicant's social reputation.**

17         Here, Tweets 1, 1A, and 2 could not harm Applicant's social reputation. At most, the

18   Tweets could be read to state that the "CEO" or the "top" of "certain company H" has "slept"

19   with "so many employees" at his former workplace and was "particularly aggressive", and that

20   his behavior of "hitting on employees" has not changed. *Id.* ¶ 18. The person that tweeted Tweet

21   1 also opines that the individual's behavior is "inappropriate as a CEO." *Id.* The statements in

22   Tweets 1, 1A, and 2 are facts and opinion about an individual, and not about the company

23   (Applicant). *Id.* Thus, they cannot harm the Applicant's social reputation. *Id.* (citing 東京地方裁

24   判所 [Tokyo District Court] Dec. 3, 2013 (Japan) (unethical sexual behavior only relates to the

25   individual's private life and does not damage a company's social reputation)). Tweet 2 states that

26   the information in Tweet 1 was obtained orally from employees of "company F" and "company

27   H". *Id.* This Tweet is not supported by cognizable evidence, so it does not impact the credibility

28

or harmfulness of Tweet 1. *Id*. Whether read in isolation or in conjunction with Tweets 1, 1A, and 2, Tweet 2 cannot damage the social reputation of Applicant. *Id*.

Regarding Tweet 3, an ordinary reader would understand this Tweet to be a criticism of the person at Bain Capital making a decision to invest in the Applicant. *Id*. ¶ 19. While this Tweet contains negative information about investing in the Applicant by stating that "investing in hey is a risk", this statement is extremely abstract and indirect. *Id*. Moreover, investing in any company is always "a risk". *Id*. Therefore, Tweet 3 does not damage the social reputation of the Applicant. *Id*. (citing 東京地方裁判所 [Tokyo District Court] Nov. 30, 2012 (Japan), 東京地方裁判所 [Tokyo District Court] Feb. 14, 2017 (Japan), 東京地方裁判所 [Tokyo District Court] Dec. 7, 2017 (Japan)).[7]

Similarly, the statement in Tweet 4 that "*entrepreneurship embracing unethical and law-evading spirits*" is extremely abstract, and it is neither a factual statement nor an opinion directed against the Applicant. *Id*. ¶ 21. Rather, this Tweet contains allegations against the individuals named therein, not Applicant. *Id*. Thus, there is no basis on which to assume that this Tweet 4 is about the Applicant or damages the social reputation of the Applicant. *Id*.

### (ii)   Applicant has not rebutted any defenses to its defamation claim.

Further, even if the Tweets are found to be defamatory statements, Applicant has not rebutted that the Tweets are for the public interest and for the public benefit. Nor has it rebutted the truthfulness of the statements by competent evidence or that the person(s) who tweeted the

---

[7] In the Nakazawa Declaration ("Nakazawa Decl."), Attorney Nakazawa refers to the judgement of 最高裁判所 [Supreme Court] Sep. 9, 1997, 最高裁判所民事判例集51巻8号3804頁 [51 Supreme Court Reports (Civil Cases) 8 (3804)] (Japan) and states that the Tweets 3 and 4 would be considered defamatory if they contain "an opinion or commentary [that] diminishes the objective social evaluation of a person's character, morality, reputation, trustworthiness, or other personal values." It is important to note however, that the Supreme Court case cited by Mr. Nakazawa was about statements of opinion or criticism *based on specific facts*, which is not the case with Tweets 3 and 4. *See* Kawabata Decl. ¶ 20. Considering the above authority, those Tweets cannot damage the social reputation of the applicant. *Id*. (citing 東京地方裁判所 [Tokyo District Court] Jul. 20, 2010 (Japan), 東京地方裁判所 [Tokyo District Court] Nov. 30, 2012 (Japan), 東京地方裁判所 [Tokyo District Court] Feb. 14, 2017 (Japan), 東京地方裁判所 [Tokyo District Court] Dec. 7, 2017 (Japan)).

1  Tweets had proper reasons to believe that they were truthful. *Id.* ¶¶ 23-24. Thus, Applicant has

2  not made a *prima facie* case of defamation under Japanese law, and the Subpoena should be

3  quashed.

### 2. The balance of harms weighs in favor of the anonymous speaker.

5  Because Applicant has not demonstrated a *prima facie* claim of defamation against the

6  account holders, there is no need for the court to consider the second factor under the *Highfields*

7  test. *See Smythe v. Does*, No. 15-MC-80292-LB, 2016 WL 54125, at *3 (N.D. Cal. Jan. 5, 2016).

8  But even if Applicant is found to have made this showing, it fails the second test. Under the

9  second step, "the court must...'assess and compare the magnitude of harms that would be caused'

10 to the plaintiff's and defendant's competing interests if the court ordered disclosure of the

11 speaker's identity." *In re Yasuda*, 2020 WL 759404, at *6 (citing *Music Grp. Macao*, 82 F. Supp.

12 3d at 983).

13 Applicant has failed to point to *any* facts showing the Applicant was harmed as a result of

14 the Tweets. Applicant merely states that "there is a strong nexus between the Applicant and

15 Sato's reputation," but this is conclusory and not supported by evidence. In addition, Applicant

16 fails to point to any evidence showing that Sato's reputation was in fact harmed. And even

17 assuming Applicant submitted evidence of harm to Sato, the fact that someone tweeted about

18 Applicant's current or former CEO does not demonstrate any harm to Applicant for purposes of

19 the second *Highfields* factor.[8]

20 On the other hand, the harm of unmasking to the anonymous speaker includes a violation

21 of their constitutional rights. *See, e.g.*, *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 342

22 (1995) (anonymous speech is protected by the First Amendment); *Buckley v. American*

23 *Constitutional Law Foundation, Inc*., 525 U.S. 182, 200, 204 (1999) (same); *Watchtower Bible*

24 *and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 166 (2002) (same); *see*

25 *also Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997) (the long-recognized right

26 to anonymous speech also applies to anonymous association online); *In re Anonymous Online*

---

[8]For this reason, Applicant has not demonstrated that the Tweets tended to injure its company or caused special damages for purposes of defamation. *Austin*, 2022 WL 298573, at *2.

*Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is no basis for qualifying the level of First Amendment scrutiny that should be applied to online speech.") (cleaned up). Speech and debate would also be chilled. Thus, the balancing of harms weighs in favor of the Twitter account holders here.

If the Court is not satisfied that the plaintiff has met both steps of the *Highfields* test, then the applicant is not entitled to discover the anonymous speaker's identity. *See Music Grp. Macao*, 82 F. Supp. 3d at 985-87 (denying motion to enforce subpoena for anonymous Twitter account holder's identifying information); *In re PGS Home Co. Ltd.*, 2019 WL 6311407 at *5 (applying *Highfields* to unmasking subpoena). Therefore, the subpoena is both "unduly burdensome" and "intrusive" under the fourth *Intel* factor.

**B.      The Court Should Quash the Subpoena Under the Third *Intel* Factor Because Enforcement Would Punish Speech Protected in this Country.**

The Subpoena also does not satisfy the third *Intel* factor, which asks courts to consider whether a request "conceals an attempt to circumvent" the policies of the United States. *Intel Corp.*, 542 U.S. at 264–65. The United States has a strong policy of ensuring the protection of First Amendment rights. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry. Accordingly, an author's decision to remain anonymous … is an aspect of the freedom of speech protected by the First Amendment."); *Bigelow v. Virginia*, 421 U.S. 809, 829 (1975) ("The policy of the First Amendment favors dissemination of information and opinion"); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (There is a "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").

For this reason, in the context of Section 1782, "an attempt to contravene the First Amendment's purpose without justification" weighs heavily against granting the application. *In re Plan. & Dev. of Educ., Inc.*, 2022 WL 228307, at *4, n.3. A court should therefore decline to

exercise "its discretion to aid in punishing speech that would be protected in this country." *In re Tagami*, 2021 WL 5322711, at *3, n.1; *see also In re Application of Ontario Principals' Council*, No. 2:13-MC-120-LKK-KJN, 2013 WL 6844545, at *3–4 (E.D. Cal. Dec. 23, 2013) (suggesting that general First Amendment principles would preclude unmasking where the speech does not support defamation or libel claims); *In re Anahara*, No. 22-MC-80063-JCS, 2022 WL 783896, at *3, n. 1 (N.D. Cal. Mar. 15, 2022) (same).[9]

To determine whether a request conceals an attempt to circumvent the policies of the United States, courts have considered whether the speech at issue would be protected by the First Amendment in the United States. *See In re Plan. & Dev. of Educ., Inc.*, 2022 WL 228307, at *4 n.3. As discussed below, the Tweets at issue here would be protected under California law, so the Court should decline to enforce the Subpoena.

### 1. The Tweets are not defamation under California law.

Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Austin v. Zhang*, No. 20-CV-05445-RS, 2022 WL 298573, at *2 (N.D. Cal. Feb. 1, 2022) (citing *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). Further, public figures must prove "actual malice" to recover on defamation claims. *New York Times v. Sullivan*, 376 U.S. 254 (1964). Here, Applicant has not demonstrated, with evidence, that the Tweets constitute a *prima facie* claim of defamation.

---

[9]Relatedly, U.S. courts also routinely find First Amendment concerns to be a sufficient public policy basis for refusing to enforce foreign judgments. *See, e.g.*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 169 F. Supp. 2d 1181 (N.D. Cal. 2001) (refusing to enforce French injunction against Yahoo! in the United States because of free speech concerns), *rev'd on other grounds*, 433 F.3d 1199, 1215 (9th Cir. 2006); *Matusevitch v. Telnikoff*, 877 F. Supp. 1, 4 (D.D.C. 1995) (finding foreign judgment unenforceable on public-policy grounds because it would be contrary to First and Fourteenth Amendments); *Bachchan v. India Abroad Publ. Inc.*, 585 N.Y.S.2d 661, 662 (N.Y. Sup. Ct. 1992) (refusing to recognize foreign judgment when "the public policy to which the foreign judgment is repugnant is embodied in the First Amendment to the United States Constitution"). That policy is even more appropriately applied here, where only legal process, rather than a judgment, is involved; the Court should likewise refuse to enforce the Subpoena on the grounds that Japanese policy runs afoul of United States policy.

1

**a.** **Applicant may not bring a defamation claim on behalf of the CEO or ex-CEO of its business.**

2

3      As a preliminary matter, Applicant lacks standing to bring a defamation claim based on

4  purported statements about Sato or Mitsumoto because the statements were not "spoken or

5  written in direct relation to the trade or business" of Applicant. *Washburn v. Wright*, 261 Cal.

6  App. 2d 789, 793, 68 Cal. Rptr. 224 (1968); *see also Palm Springs Tennis Club v. Rangel*, 73 Cal.

7  App. 4th 1, 4, 86 Cal. Rptr. 2d 73 (1999). If statements "relate solely to the stockholder, officer or

8  employee in his private or personal capacity, only the individual can complain." *Id.* The First

9  Amendment "requires that the statement on which the [defamation] claim is based must

10 specifically refer to, or be 'of and concerning,' the plaintiff in some way," reserving the right of

11 action only "to those who are *the direct object* of criticism" and not to those "who merely

12 complain of nonspecific statements that they believe cause them some hurt." *Blatty v. New York*

13 *Times Co.*, 42 Cal. 3d 1033, 1042, 1044, 728 P. 2d 1177 (1986) (emphasis added).

14      Applicant is not complaining of any direct criticism. Rather, Applicant (by way of an

15 attorney declaration) is complaining that nonspecific statements may have caused it "some hurt,"

16 *Blatty*, 42 Cal. 3d at 1044, but almost certainly have not. Tweet 1, for example, does not refer to

17 Applicant directly (instead only using the initial "H") and comments on sexual misbehavior of the

18 CEO of "H" and another company. There is no direct commentary on Applicant whatsoever.

19 Likewise, the Tweet 1A only refers to "H" and whether some people involved in the company are

20 "shady," as well as a third party's evaluation of risk in being involved in the company, and Tweet

21 2 refers to aggressive behavior by an individual at H. Tweet 3 questions Bain Capital's

22 investment in "hey" based on a personal assessment of risk, but again, there is no direct

23 commentary on the Applicant's trade or business. Tweet 4 names Sato and Mitsumoto, and

24 questions their behavior, but does not refer to Applicant at all.

25      None of these statements directly comment on Applicant's business or trade. *See Palm*

26 *Springs Tennis Club*, 73 Cal. App. 4th at 4 (no defamation claim where statements about

27 chairman of the board of a company did not relate to the business or trade of the company); c*f.*

28 *Church of Scientology of California v. Flynn,* 744 F.2d 694, 697 (9th Cir. 1984) (finding that

-16-

1   organization had been defamed based on statements that "the Church of Scientology," and "[the

2   organization] that I have been litigating with," had attempted to murder defendant). Instead, the

3   worst inference that can be made is that some individuals with ties to Applicant have engaged in

4   questionable behavior. This is not sufficient to support a defamation claim by Applicant.

5   *Washburn*, 261 Cal. App. 2d at 794 (finding that a newspaper could not bring an action based on

6   accusation that a newspaper founder was a member of an antisemitic organization because it did

7   not concern the founder's performance of "duties and responsibilities of their office").

8   Applicant's defamation claim fails under California law for this reason alone.

9                       **b.      Applicant has not demonstrated falsity.**

10          In addition, to be defamatory, a Tweet must contain a false statement. *Austin*, 2022 WL

11   298573, at *2.[10] Applicant argues that Tweets 1 and 2, presumably including Tweet 1A, are false

12   based on an "investigation" by Attorney Yuichi Nakazawa. *See* Declaration of Yuichi Nakazawa,

13   Dkt 1-1 ("Nakazawa Decl."). Specifically, Attorney Nakazawa claims that the Tweets have a

14   "strong indication the Tweets are based on solid evidence," but "based on [his] investigation into

15   this matter, there were no such facts to which [the Tweets] referenced." Nakazawa Decl. ¶ 5. He

16   maintains that also based on his "investigation into this matter," the Tweets contain "false factual

17   statements that Applicant's CEO, Sato, had a sexual relationship with multiple employees

18   immorally," and they therefore constitute defamation against Sato (and, given the nexus between

19   Sato and Applicant, Applicant as well). *Id.* ¶ 8.

20          Attorney Nakazawa's declaration is not competent evidence of falsity as to Tweet 1,

---

22   [10]Applicant also claims that it will bring an unlawful business interference claim, although the
Application contains no analysis regarding the merits of such a claim. Therefore, Applicant has

23   not made a *prima facie* claim of unlawful business interference. In any event, First Amendment
defenses also apply to a business interference claim. *See Unelko Corp. v. Rooney*, 912 F.2d 1049,

24   1058 (9th Cir. 1990) (A claim for tortious interference with business relationships is "subject to
the same [F]irst [A]mendment requirements that govern actions for defamation."); *Aurora World,*

25   *Inc. v. Ty Inc.*, No. CV 09-08463 MMM (EX), 2010 WL 11506546, at *13 (C.D. Cal. Aug. 24,
2010) ("Substantial truth thus constitutes a defense to defamation and trade libel/commercial

26   disparagement claims" under California law); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th
993, 1014, 113 Cal. Rptr. 2d 625 (2001) ("A person cannot incur liability for interfering with

27   contractual or economic relations by giving truthful information to a third party.") (citation

28   omitted).

Tweet 1A, and Tweet 2.[11] *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations are entitled to no weight where declarant lacks personal knowledge); *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999 (9th Cir. 1990) (a declarant's mere assertion of personal knowledge and competency to testify are not sufficient).[12] Here, Attorney Nakazawa is not competent to opine on the matters discussed in the Tweet 1, 1A, and 2. Rather, if these Tweets are referring to Sato and Mitsumoto, they have personal knowledge of their behavior, and only they (or others personally involved in the events) are competent to testify on those matters. Even crediting Attorney Nakazawa's declaration, at most, he has provided evidence of *his opinion* of whether the matters are false—not that the matters are actually false. *See* Nakazawa Decl. ¶ 8 ("Based on my investigation into this matter, the Subject Tweet 1 and Subject Tweet 2 contain false factual statements").

Moreover, Attorney Nakazawa does not maintain that Tweets 3 and 4 are false, which is fatal to Applicant's claims arising from those Tweets. Nakazawa Decl. ¶ 9. Instead, Attorney Nakazawa argues that there is an alternate basis under Japanese law that supports the conclusion that those Tweets are defamatory—that if an "opinion or commentary diminishes the objective social evaluation of a person's character, morality, reputation, trustworthiness, or other personal values," speech may be considered defamation. *Id.* ¶ 9. Under California law, however, falsity is an element of defamation, and Tweets 3 and 4 are therefore protected by the First Amendment. *Highfields*, 385 F. Supp. at 976 ("[t]he court may not enforce the subpoena if, under plaintiff's showing, any essential fact or finding lacks the requisite evidentiary support."). Therefore, Applicant's defamation claim fails for these additional reasons.

### c.   The Tweets are protected opinion, not defamation.

Even if Applicant had provided competent evidence to support its claim that the Tweets

---

[11] *See also* Twitter's Objections to Evidence, *infra*, Section V.A.

[12] Attorney Nakazawa's declaration also details how Sato is (1) "a well-respected and well-known entrepreneur in Japan;" (2) that he has a "Twitter following of over 50,500 followers;" and (3) he has been called a "Serial Entrepreneur" and "Genius Programmer." *Id.* Of course, Attorney Nakawa's investigation and belief that Sato is entitled to respect for his entrepreneurial skills and the amount of his Twitter followers is not relevant to whether Tweets 1 and 2 are false.

are false (it has not), the Tweets are protected opinion because they do not contain a provably false factual connotation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Unelko Corp.*, 912 F.2d at 1053 n.2.

"To determine whether a statement implies a factual assertion, [courts] examine the totality of the circumstances in which it was made." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). Courts generally consider (1) the broad context and general tenor of the work; (2) the specific context and content of the work, including the reasonable expectations of the audience in the particular situation; and (3) whether the statement is sufficiently factual to be proven true or false. *See id.*; *see also Unelko Corp.*, 912 F.2d at 1053. Considering the totality of the circumstances, each of the Tweets are protected opinions under California law, such that the Court should decline to enforce the subpoena under the third *Intel* factor.

First, the Tweets' broad context and general tenor negates the impression that the statements are factual. While generally, "online speech stands on the same footing as other speech," *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173,(9th Cir. 2011), statements made on blogs or social media are a subspecies of online speech which inherently suggest that statements made there are not likely provable assertions of fact. *See, e.g.*, *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (statements made on personal website and through online discussion group less likely to be seen as assertions of fact); *see also Unsworth v. Musk*, No. 2:18-CV-08048-SVW-JC, 2019 WL 4543110, at *6 (C.D. Cal. May 10, 2019) ("The more statements lack the formality and polish typically found in documents in which a reader would expect to find facts, the more likely the statements are nonactionable opinion."). Indeed, in the general context of Twitter, a reader would expect to find expressions of opinion about a topic, not facts, as the Twitter platform is designed to facilitate such speech.

Second, the specific context of the Tweets negates the impression that the Tweets are factual statements. *Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011), at *7 (statements made on obviously critical blog with heated discussion and criticism less likely to be viewed as assertions of fact); *see also Gardner v.*

*Martino*, 563 F.3d 981, 988 (9th Cir. 2009) (audience had reduced expectation of learning objective facts from radio talk program with dramatic and opinionated host, known for using hyperbolic language). Here, the Tweets 1, 1A, and 2 are critical discussions between Twitter account holders about the behavior of individuals. Tweet 3 merely questions an investment decision. And only Tweet 4 discusses specific individuals. This is precisely the type of forum where people would be expected to express opinions, personal views, and engage in speculation, not convey factual information. Therefore, it is unlikely that anyone reading any of the Tweets would take them as assertions of fact.

In addition, there are no statements of fact in the Tweets regarding Applicant that are susceptible of being proven true or false. The Tweets discuss matters a number of issues, including: (1) the workplace relationships (and potential illicit or at least ill-advised nature of the same) and temperament of an individual, presumably Sato, who is apparently a successful businessman, Nakazawa Decl. ¶ 8, and (2) the "tequila incident." The Tweets react to these matters—for example, they express the opinion that it is inappropriate for a CEO to hit on employees (Tweet 1); that a friend's decision to avoid entanglement with a certain company seemed to have been a good decision in light of "some shady stuff lurking in multiple areas," including the tequila incident, (Tweet 1A); that a certain person's "aggression" or "gross[ness]" was likely widely known by employees (Tweet 2); that the account holder doesn't understand why Bain Capital would invest in Applicant given the "risk," (Tweet 3); and that Mitsumoto and Sato are "unethical and law-evading spirits" (Tweet 4). At most, the only Tweet that references Applicant opines that investment in the company is risky—but this is entirely dependent on subjective evaluation and too abstract to constitute a fact. And to the extent any portions of Tweets are factual, Applicant has not submitted any competent evidence that the statements are, in fact, false.[13]

---

[13]To the extent Applicant is attempting to hold @cogitopp liable for retweeting the Tweet 1A, which was originally tweeted by @mlnk901, such an attempt would be barred in the United States by the federal Communications Decency Act, 47 U.S.C. § 230. *See Banaian v. Bascom*, No. 2020-0496, 2022 WL 1482521, at *4 (N.H. May 11, 2022) (holding that under the Communications Decency Act, "individual users are immunized from claims of defamation for

Taking the totality of the circumstances into account, the Tweets are protected under California law as opinion. Applicant also cannot sustain a defamation claim for these reasons.

### d.    Applicant has not shown that the statements were made with either actual malice or negligence.

In addition to the defects above, Applicant has failed to introduce any evidence regarding actual malice. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Supreme Court defined an "all purpose" public figure as one who has "achiev[ed] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." Public figures must prove "actual malice" to recover on defamation claims— that the statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254 (1964). Furthermore, actual malice must be pled with specificity. *See Barger v. Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 1156 (N.D.Cal.1983), *aff'd,* 732 F. 2d 164 (9th Cir. 1984) (requiring heightened pleading standard for malice; dismissing case with prejudice for failure to satisfy requirement).

Applicant should be treated as a public figure because it has undertaken "significant, voluntary efforts to inject [it]self into the public arena." *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 256, 600 P. 2d 610 (1984); *see also Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *8–9 (N.D. Cal. June 15, 2011) (well-known organization that voluntarily solicits media attention is a public figure for defamation purposes) (citing *Reader's Dig. Assn.*). Specifically, Applicant is a leading payments and e-commerce company based in Japan.[14] In August of 2020, it was widely reported that Applicant had secured approximately $66 million dollars in Series E investment funding from Bain Capital Tech Opportunities, with

retweeting content that they did not create" because such immunity from suit "is evident from the statutory language.") (citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997) (explaining that the language of section 230 makes "plain that Congress' desire to promote unfettered speech on the Internet must supersede conflicting common law causes of action")).

[14]News Release, PRNewswire, hey, Leading Payments and e-Commerce Player in Japan, Secures Growth Investment Led by Bain Capital Tech Opportunities (Aug. 4, 2020), https://www.prnewswire.com/news-releases/hey-leading-payments-and-e-commerce-player-in-japan-secures-growth-investment-led-by-bain-capital-tech-opportunities-301105468.html (last visited May 23, 2022).

participation from PayPal Ventures, Goldman Sachs, YJ Capital, Anatole, and World Innovation Lab.[15] This investment, and the surrounding media coverage of the investment, was the subject of Tweet 3. Applicant also maintains an active web presence, including a company website that frequently posts news updates and press releases,[16] and operates an eponymous web-magazine titled "heyMAGAZINE."[17] Because Applicant is a public figure for defamation purposes, Applicant must show actual malice to make a *prima facie* case.

Applicant does not provide any evidence on the question of actual malice, let alone make any reference to the speakers' intent or mental states. Thus, even if Applicant is considered a private figure (which Twitter contests), Applicant has not "plead facts that permit an inference that [the defendant] was at least negligent as to the truth of its statements . . . ." *Wirt v. Twitter, Inc.*, No. 21-MC-80166-JSC, 2021 WL 5919846, at *2 (N.D. Cal. Dec. 15, 2021)). For this additional reason, Applicant's defamation claim fails because it has not made the requisite showing of the Twitter account holder's state of mind.

### e. The Tweets are not "fighting words" or "obscenity."

Finally, the Tweets are not, as Applicant claims, "pure fighting words and obscenity" that fall outside of the protections of the First Amendment. App. 1 at 10. The statements are simply vague criticism of the behavior of individuals online. It strains credulity that the statements would

---

[15] *See e.g.*, Luisa Beltran, *Bain Just Invested in Japanese Payment Company Hey. Here's Why.*, BARRON'S, Aug. 4, 2020, https://www.barrons.com/articles/bain-just-invested-in-japanese-payments-company-hey-heres-why-51596575101 (last visited May 23, 2022); Milana Vinn, *Bain Tech Opportunities makes first fintech bet with hey*, PE HUB, Aug 5, 2020, https://www.pehub.com/bain-tech-opportunities-makes-first-fintech-bet-with-hey/ (last visited May 23, 2022); News Release, Bain Capital Tech Opportunities, hey, Leading Payments and e-Commerce Player in Japan, Secures Growth Investment Led by Bain Capital Tech Opportunities (Aug. 4, 2020), https://www.baincapital.com/news/hey-leading-payments-and-e-commerce-player-japan-secures-growth-investment-led-bain-capital (last visited May 23, 2022); *hey secures growth investment led by Bain Capital Tech Opportunities*, THE PAYPERS (Aug. 4, 2020), https://thepaypers.com/online-payments/hey-secures-growth-investment-led-by-bain-capital-tech-opportunities--1243917 (last visited May 23, 2022); *Japan's Payments Firm Hey Nets Series E Funding Led By Bain Capital*, PYMNTS (Aug. 4, 2020), https://www.pymnts.com/news/investment-tracker/2020/japans-payments-firm-hey-nets-series-e-funding-led-by-bain-capital/ (last visited May 23, 2022).
[16] *News*, HEY, https://www.hey.jp/news.
[17] HEY MAGAZINE, https://mag.hey.jp/.

1    provoke "imminent lawless action," and they are therefore not "fighting words." *See*

2    *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Nor are the Tweets "obscenity," which refers to

3    only a narrow category of pornography that that is "utterly without redeeming social value."

4    *Miller v. California*, 413 U.S. 15, 37 (1973). Therefore, the Tweets do not fall outside the

5    protection of the First Amendment.

6              **2.       The Subpoena should not be enforced to the extent it conflicts with
                          United States law.**
7

8              Applicant acknowledges that the First Amendment principles apply here, but it argues

9    only that the Subpoena would not be contrary to any Japanese policies. App. at 7. Applicant's

10   intent to evade the policies of the United States is, however, clear with respect to its arguments as

11   to Tweets 3 and 4. Applicant does not argue that Tweets 3 and 4 are false, which defeats its

12   defamation claim under California law, but it claims that "[i]n Japan, not only a false statement of

13   fact, but also *an opinion or commentary may constitute defamation*, if such opinion or

14   commentary diminishes the objective social evaluation of a person's character, morality,

15   reputation, trustworthiness, or other personal values. Nakazawa Decl. ¶ 9 (emphasis added).

16   There is no such exception to opinion in the United States.

17             Given that California law plainly bars Applicant's claims, allowing enforcement of the

18   Subpoena would make speech actionable that is protected by the United States Constitution. *See*

19   *In re Plan. & Dev. of Educ., Inc.*, 2022 WL 228307, at *4, n.3 (considering whether Tweets

20   would be protected in the United States, as well as foreign law). Such a rule could subject even

21   U.S. citizens to the chilling effect of more constrictive foreign nations' laws. *See Virginia State*

22   *Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) (where a

23   speaker exists … the protection afforded is to the communication, to its source and to its

24   recipients both."); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021), *cert. denied*

25   *sub nom. David v. Kazal*, No. 21-1156, 2022 WL 1131404 (U.S. Apr. 18, 2022) (There is a "First

26   Amendment right of domestic listeners to receive speech from foreign speakers.") (citing

27   *Kleindienst v. Mandel*, 408 U.S. 753 (1972)). Therefore, given that the speech is protected

28

opinion on matters of public concern, the Court should ensure that the speech remains available and prevent against the chilling effect from enforcement of the Subpoena. Therefore, the Subpoena should be quashed under the third *Intel* factor.

Accordingly, for this reason also, the Subpoena should be quashed.

## V.    OBJECTIONS TO EVIDENCE

Pursuant to Civil L.R. 7-3(a), Twitter hereby submits the following objections to the evidence filed in support of Applicant's Section 1782 Application.

### A.    Objections to Nakazawa Declaration

| No. | Material Objected To | Ground(s) for Objection |
|---|---|---|
| 1. | Paragraph 2, in its entirety. | Attorney Nakazawa has not demonstrated personal knowledge to support his conclusions. Fed. R. Evid. 602. |
| 2. | Paragraph 5, eighth sentence. | Attorney Nakazawa has not established personal knowledge regarding whether Tweets 1, 1A, and 2 contain false allegations. Fed. R. Evid. 602. <br><br> Attorney Nakazawa's investigation into the Tweets is not relevant to whether the Tweets are actually false. Fed. R. Evid. 401, 402. <br><br> To the extent Attorney Nakazawa relied on statements of others, the sentence is hearsay not subject to any exception. Fed. R. Evid. 801. |
| 3. | Paragraph 8, first sentence. | Attorney Nakazawa has not established personal knowledge regarding whether Tweets 1 and 2 are false. Fed. R. Evid. 602. <br><br> Attorney Nakazawa's investigation into the Tweets is not relevant to whether the Tweets are actually false. Fed. R. Evid. 401, 402. <br><br> To the extent Attorney Nakazawa relied on statements of others, the sentence is hearsay not subject to any exception. Fed. R. Evid. 801. |
| 4. | Paragraph 8, second sentence. | Attorney Nakazawa has not established personal knowledge of Sato's reputation. Fed. R. Evid. 602. <br><br> Sato's reputation, the number of his Twitter followers, and how he is referred to in the public is not relevant to whether the Tweets are false. Fed. R. Evid. 401, 402. <br><br> Attorney Nakazawa's investigation into the Tweets is |

| | | | |
|---|---|---|---|
| | | | not relevant to whether the Tweets are actually false. Fed. R. Evid. 401, 402. |
| 5. | Paragraph 8, third and fourth sentences. | | Attorney Nakazawa's conclusion that because Sato is connected with Applicant, Tweets 1 and 2 are therefore defamatory, is an improper legal conclusion because it is not rationally based on his perception. Fed. R. Evid. 701, 702. |
| 6. | Paragraph 9, first sentence. | | Attorney Nakazawa's conclusion that Tweets 3 and 4 are defamatory is an improper legal conclusion because it is not rationally based on his perception. Fed. R. Evid. 701, 702. |
| 7. | Paragraph 10, in its entirety. | | Attorney Nakazawa has not established personal knowledge of Japanese law on harassment or business interference. Fed. R. Evid. 602.  Attorney Nakazawa's conclusions that the Tweets constitute harassment, unlawful business interference, and defamation are improper legal conclusions because they are not rationally based on his perception. Fed. R. Evid. 701, 702. |
| 8. | Paragraph 12, third sentence. | | Attorney Nakazawa has not established personal knowledge of access logs or their retention. Fed. R. Evid. 602. |
| 9. | Nakazawa Declaration in its entirety. | | To the extent the Nakazawa Declaration contains attorney argument about the Tweets and otherwise, rather than factual testimony, it should be considered as such for purposes of adjudicating the Motion. |

## VI.    CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court grant its Motion and quash the Subpoena in its entirety.


Dated:  May 23, 2022                              **PERKINS COIE LLP**


                                                  By: *s/Julie E. Schwartz*
                                                  Julie E. Schwartz
                                                  Jasmine W. Wetherell
                                                  Kim Y. Ng

                                                  Attorneys for Respondent
                                                  TWITTER, INC.