JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
hey, inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Ex Parte Application of | Case No: 4:21-mc-80102-DMR |
| hey, inc., | **APPLICANT HEY, INC.'S OPPOSITION AND RESPONSE TO RESPONDENT TWITTER, INC.'s AND JOHN DOES' MOTIONS TO QUASH** |
| Applicant. | |
| _____ | Date: August 25, 2022 |
| | Time: 1:00 PM |
| | Judge: Donna M. Ryu |
| | Courtroom: Courtroom 4 – 3rd Floor |

## I.        Introduction

Applicant, hey, inc. ("Applicant") is a corporation organized and existing under the laws of Japan.  After Applicant's application under 28 U.S.C. § 1782 was granted by this Court, Applicant served a subpoena on Twitter, Inc. ("Twitter") on April 22, 2022, seeking information to assist it in identifying individual(s) using the Twitter names "@cogitopp," "@mlnk901," and "@DJ_AsadaAkira," who posted tweets which constitute defamation against Applicant under the Japanese Civil Code.  Declaration of Junji Suzuki ("Suzuki Decl.") ¶ 2-3.

Twitter and John Does ("Movants") now move to quash the subpoena and  seek the court's determination on two issues relating to: (i) the fourth discretionary factor under *Intel Corp.*, 542 US at 265 (whether the request is "unduly intrusive or burdensome"); and (ii) the

-Page 1 of 14-
**In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)**
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

third discretionary factor under *Intel Corp.*, *Id.*, ("whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"). Movants do not dispute that Applicant has met the statutory requirements under 28 U.S.C. § 1782 and, other than the above two concerns, they do not dispute the scope of the subpoena. For the reasons stated below, Applicant asserts that the requirements have been met and asks that the Court deny the motions to quash.

## II.        BACKGROUND

Applicant is a growing start-up company established in 2012, planning, developing and operating internet business. Mr. Yusuke Sato ("Mr. Sato") is the Applicant's current CEO, and Mr. Yusuke Mitsumoto ("Mr. Mistsumoto") is the Applicant's ex-CEO. Declaration of Yuichi Nakazawa concurrently submitted with Applicant's ex parte application for order pursuant to 28 U.S.C. § 1782 ("Nakazawa Decl. 1") ¶ 4.

On September 10, 2021, an unknown individual using the Twitter name of ベギラマ くん@cogitopp[1] ("begirama-kun @cogitopp" in English; "Subject Account 1") tweeted[2] that the top of "Company H" had sexual relationships with multiple employees of the company and his former company, "Frea○Out" ("Subject Tweet 1"). Nakazawa Decl. 1 ¶ 5. The statements made in the tweet are untrue. *Id.*, Declaration of Yusuke Sato ("Sato Decl.") ¶ 2. Subject Tweet 1 was retweeted[3] by another Twitter user using the name of MILK@mlnk901[4] ("Subject Account 2"), adding a further statement referring to "Company H" and "a tequila incident." Nakazawa Decl. 1 ¶ 5. In Japan, the "tequila incident" was a notable event wherein Mr. Mitsumoto, the Applicant's ex-CEO, played a "tequila game" with a woman in Tokyo, whose physical condition suddenly changed thereafter. She was rushed to the hospital where she

---

[1] https://twitter.com/cogitopp

[2] https://twitter.com/cogitopp/status/1436100450172891159?s=20

[3] https://twitter.com/mlnk901/status/1436055927665283079

[4] https://twitter.com/mlnk901

<u>In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)</u>
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

died[5]. *Id.*  Further, Mr. Sato was co-founder of FreakOut, inc. (currently known as "FreakOut Holdings, inc.").  By mentioning the "tequila incident," the company name "H," which is the initial of the Applicant's company name, the word "Frea○Out," which implies FreakOut and FreakOut Holdings, inc., and the statement that the current CEO of Company H was a co-founder of  "Frea○Out," the Twitter user  clearly referred to Applicant. *Id.*; Declaration of Yuichi Nakazawa concurrently submitted with Applicant's Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motions to Quash ("Nakazawa Decl. 2") ¶ 8-12. On the same day, in response to a reply to Subject Tweet 1, Subject Account 1 tweeted[6] that what he or she claimed were facts were known to the employees of "Company F" and "Company H," and Mr. Sato was particularly aggressive ("Subject Tweet 2"). Nakazawa Decl. 1 ¶ 5. The purported factual statements provided in Subject Tweet 1 and Subject Tweet 2 were totally false and defamatory.

In addition, on September 26, 2021, Subject Account 2, citing a press release announcing that Bain Capital, LP had invested in Applicant, tweeted[7] that the person who made the decision to make that investment lacked the common sense to judge between right and wrong ("Subject Tweet 3"). *Id.* at ¶ 6.

Further, on October 27, 2021, an individual using the Twitter name of アサダアキラ 松 （ビジパ専門家）｜令3年2月〜12月「スタートア… @DJ_AsadaAkira ("asada-akira-san-team (bijipa-professional) from February to December of 2021, "Start U...@ DJ_AsadaAkira" in English)[8] tweeted[9], referring to the names of Mr. Mitsumoto and Mr. Sato, that their entrepreneurship embracing unethical and law-evading spirits should be criticized, in

---

[5] https://www.dailyshincho.jp/article/2020/12101407/

[6] https://twitter.com/cogitopp/status/1436110462949617669

[7] https://twitter.com/mlnk901/status/1442025131501449219?s=20

[8] https://twitter.com/DJ_AsadaAkira

[9] https://twitter.com/dj_asadaakira/status/1453353635027423238?s=21

**In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)**
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

other words, that they lack ethical standard and do not mind breaking the law ("Subject Tweet 4"). *Id.* at ¶ 7.

According to Yuichi Nakazawa, Applicant's Japanese attorney, Subject Tweet 1, Subject Tweet 2, Subject Tweet 3 and Subject Tweet 4 (collectively the "Subject Tweets") were tweeted for harassment purposes, and constitute defamation and unlawful business interference against Applicant under Japanese Civil Code 709[10][11]. Nakazawa Decl. 1 ¶ 10.

Therefore, Applicant intends to bring a lawsuit in Japan against the person(s) associated with Subject Account 1, Subject Account 2 and Subject Account 3 (collectively the "Subject Accounts") as soon as the identities of the persons making the defamatory statements and unlawfully interfering with Applicant's business have been ascertained through the discovery sought by the subject application. Nakazawa Decl. 1 ¶ 11.

In order to identify the person(s) who committed unlawful acts against Applicant through the Subject Accounts, it is crucial for Applicant to obtain information relating to the Subject Accounts. Nakazawa Decl. 1 ¶ 12.

## III.        ARGUMENT

### A.        Legal Standard

An applicant seeking discovery for use in a foreign proceeding must demonstrate that (1) the person from whom the discovery is sought resides or is found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or any interested person. 28 USC. § 1782; *In re The Republic of Ecuador*, Case No. C-10-80225 MISC CRB (EMC), 2010 US Dist. LEXIS 102158 (N.D. Cal. Sept. 15, 2010) at*1.

In exercising its discretion under 28 USC. § 1782, a district court should further consider the following non-exhaustive factors: "(1) whether the "person from whom discovery

---

[10] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089

[11] http://www.japaneselawtranslation.go.jp/law/detail/?id=2057&vm=&re

**In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)**
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome." *In re Apple Inc.*, 2012 US Dist. LEXIS 66669, 3-4 (N.D. Cal. May 2, 2012) (quoting *Intel Corp.*, 542 US at 264-65 (US 2004)).

**B.   Applicant's Application Meets All of the Statutory Requirements under 28 USC. § 1782.**

Applicant satisfies all of the statutory requirements under 28 U.S.C. § 1782.

First, Twitter, from whom the discovery requested in this application is sought, is located in San Francisco, California[12] [13].  Therefore, Twitter is within this Court's district.

Second, the discovery requested in this application will be used in a proceeding before a foreign tribunal. The foreign proceeding needs not actually be under way before 28 USC § 1782 may be invoked. It is enough that such proceedings are "likely to occur" or are "within reasonable contemplation." *Intel Corp*, 542 U.S. at 258-59 (quoting *In re Letter Request From Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 691 (DC Cir. 1989)).  Applicant intends to bring a lawsuit in Japan against the person(s) associated with the Subject Accounts as soon as the person's identity has been ascertained through the discovery sought by this application. Nakazawa Decl. 1 ¶ 9.  Thus, the requirement that the discovery be for use in a foreign proceeding is met.

Third, the application to seek discovery pursuant to 28 USC. § 1782 may be made by "any interested person."  As plaintiff in the anticipated litigation in Japan, Applicant is clearly an interested person under 28 USC. § 1782.

**C.   Applicant's Application Further Meets All of the Discretionary Factors under *Intel*.**

---

[12] https://investor.twitterinc.com/corporate-governance/contact-the-board-/default.aspx

[13] https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=03006676-30506312

**In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)**
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

**1.   Applicant Met the First Two Discretionary Factors under *Intel*.**

Applicant satisfies the first three discretionary factors under *Intel* and Movants do not dispute that such is the case.

The first *Intel* factor asks whether the "person from whom discovery sought is a participant in the foreign proceeding." *Intel Corp.*, 542 US at 264.  Twitter is not a participant in the prospective Japanese lawsuit. Nakazawa Decl. 1 ¶ 14.  Additionally, the documents that Applicant seeks are located in the United States and not in Japan.  Thus, they are out of reach of the Japanese court's jurisdiction.

**2.   The Requested Information Is Crucial to Applicant's Bringing Lawsuit in Japan and the Japanese Courts Would Be Receptive to this Court's Assistance.**

The second *Intel* factor provides that "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance." *Intel Corp.*, 542 US at 264.  In order to identify the person(s) who committed unlawful acts against Applicant through the Subject Accounts in question for purposes of bringing a lawsuit against them in a Japanese court, it is crucial for Applicant to obtain the information relevant to the Subject Accounts. Nakazawa Decl. 1 ¶ 10.  Japanese law does not allow "John Doe defendants" in civil litigation, and a plaintiff must state names and physical addresses of the all parties in the complaint. Article 2 (1) of Rules of Civil Procedure (Rules of the Supreme Court of Japan No. 5 of 1996 ). *Id.* at ¶ 11.  Therefore, without first obtaining the information about the Subject Accounts, Applicant may not even commence litigation. *Id.*  In addition, the Japanese courts would be receptive to this court's assistance. In fact, the Japanese courts have routinely been receptive to discovery assistance from  US courts. *Marubeni Am. Corp. v. LBA YK*, 335 Fed. Appx. 95, 97-98, 2009 US App. LEXIS 12953, *7-8 (2d Cir. NY. 2009); *In re Application of LG Elecs. Deutschland GMBH*, 2012 US Dist. LEXIS 70570, *5, 2012 WL 1836283 (S.D. Cal. May 21, 2012).

**3.    Applicant Has Made a Sufficient Showing That the First Amendment Safeguards Are Met and Applicant's Request Is Narrowly Tailored to Highly Relevant Information and Not Unduly Intrusive or Burdensome.**

The fourth *Intel* factor asks whether the request is "unduly intrusive or burdensome[.]" *Intel Corp.*, 542 US at 265.   Movants do not dispute the scope of the subpoena, except for only one issue: whether the requirements under the First Amendment are met in unmasking the anonymous online speaker(s).

"Although speech on the Internet receives First Amendment protection, 'freedom of speech has its limits; it does not embrace certain categories of speech, including defamation....'" *In re Application of Ontario Principals' Council*, No. 2:13-MC-120-LKK-KJN, 2013 WL 6844545 at *4 (E.D. Cal. Dec. 23, 2013) (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-46, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002)).   "[T]he right to anonymity is not absolute. Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622 at *4 (N.D. Cal. Nov. 9, 2011).

According to Yuichi Nakazawa, Applicant's Japanese attorney, the Subject Tweets were tweeted for harassment purposes and constitute defamation and unlawful business interference against Applicant under Japanese Civil Code 709[14][15]. Nakazawa Decl. 1 ¶ 10.

The requirements for a claim for damages under Article 709 of the Civil Code are: (1) intention or negligence; (2) infringement of rights or interests; (3) damage; and (4) cause. However, in general, the determination of damages in a claim for damages based on a tort of defamation does not require the occurrence of actual damages. Nakazawa Decl. 2 ¶ 5.   In addition, for defamatory acts on the Internet, where there are often multiple defamatory articles posted, it is often impossible to explain or prove the specific correspondence between

---

[14] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089

[15] http://www.japaneselawtranslation.go.jp/law/detail/?id=2057&vm=&re

<u>In re Ex Parte Application of hey, inc. (4:21-mc-80102-DMR)</u>
Applicant hey, inc.'s Opposition and Response to Respondent Twitter, Inc.'s and John Does' Motion to Quash

individual defamatory articles and the damages incurred, or the causal relationship leading to the occurrence of damages, and establishment of such specific causal relationships is not required. *Id.* ¶ 6. In general, the content of posts, the circumstances leading to the posting, and the extent of propagation are considered as factors, and damages are calculated as "intangible damages" by recognizing the occurrence of abstract damages (see 東京地方裁判所 [Tokyo District Court] March 25, 2021, 令 2（ワ）4099 号[2020 (Wa) No. 4099], 2021WLJPCA03258012; 東京地方裁判所 [Tokyo District Court] March 16, 2021, 令 2（ワ）1522 号 [2020 (Wa) No. 1522], 2021WLJPCA03169003). Article 248 of the Code of Civil Procedure provides that "if damage is found to have occurred, but, due to the nature of the damage, it is extremely difficult to prove the amount of damage that occurred, the court may reach a finding on the amount of damage that is reasonable, based on the entire import of oral arguments and the results of the examination of evidence," and it is not unusual for court judgments to apply this provision to determine the amount of damages for defamation that harms a corporation's reputation or obstructs its business because it is difficult to prove operational losses (see 東京地方裁判所 [Tokyo District Court] September 27, 2007, 平 17（ワ）26855 号 [2005 (Wa) No. 26855], 平 18（ワ）13565 号 [2006 (Wa) No. 13565], 2007WLJPCA09278011; 横浜地方裁判所相模原支部 [Yokohama District Court, Sagamihara Branch] September 26, 2018, Case of Claiming Damages, 2018WLJPCA09266026). *Id.* ¶ 7.

As both Mr. Kawabata and Twitter acknowledge, the "tequila incident" is a very well-known incident in Japan concerning Mr. Yusuke Mitsumoto, a businessman and entrepreneur. The incident is so famous that when the keyword "テキーラ" ("tequila" in English) is typed on Google, the predictive search suggestions suggest, "Tequila Mitsumoto" and "Tequila Yusuke Mitsumoto." *Id.* ¶ 9. On the website[16] to which Mr. Kawabata refers to show Mr. Mitsumoto's background, the main companies and businesses that Mr. Mitsumoto has launched so far are: (i) Bracket Corporation, (ii) STORES.jp, Inc., (iii) Bank, Inc., (iv) hey,

---

[16] https://yusuke.tokyo/

Inc. (Applicant), (v) TRAVEL Now, and (vi) FOLLOW ME, highlighted in yellow. The Wikipedia page  on Mr. Mitsumoto also states, "Yusuke Mitsumoto (born December 10, 1982) is a Japanese businessman and entrepreneur. He is the founder of Bank, Inc., STORES. jp, Inc., JIKKEN, Inc., and co-founder of hey, Inc." Although Mr. Mitsumoto is a continual entrepreneur, the list of major companies and businesses he has launched always includes Applicant. *Id.* 10.  Given that Mr. Mitsumoto is a co-founder of Applicant, it can certainly be said that "The Applicant is not unique in its association with Mr. Mitsumoto" as Mr. Kawabata argues. However, Yusuke Mitsumoto is instantly recalled when the "tequila incident" is mentioned and only Applicant can be recalled as "Company H" regarding Mr. Mitsumoto. *Id.* ¶ 11.  In addition, "@cogitopp" also mentions the name "FreakOut." Mr. Yusuke Sato, the current Representative Director of Applicant, is also famous as a continual entrepreneur like Mr. Mitsumoto, and is known for having participated in the founding or management of: (i) FreakOut, Inc., (ii) IGNIS Ltd. and (iii) hey, inc. (Applicant). Therefore, while the references to "Company H" and the "tequila incident" have already implied Applicant, by also mentioning Mr. Sato's previous company, FreakOut, it becomes more certain that the tweets are referring to Applicant or to Mr. Sato. *Id.* ¶ 12.

Additionally, the Twitter account mentions that the "head" of Applicant has "slept with so many employees," or in other words, has had sexual relations with multiple employees. The original language of "slept with so many" ("食いまくってた") implies that the sexual relations are not healthy in nature.  Regardless of whether the "head" refers to Mr. Sato or not, such conduct by a company's representative or management is inappropriate and constitutes sexual harassment, and the fact that the company is in such a state as to allow that to continue is damaging to Applicant's social reputation and attacks its honor. Id. ¶ 13.  Meanwhile, all the assertions are entirely false. Sato Decl." ¶ 2.

In this connection, Mr. Kawabata refers to Tokyo District Court's December 3, 2013 decision, which states that "unethical sexual behavior only relates to the individual's private life and does not damage a company's social reputation." The ruling states, "the fact that the former president of the company is attempting to have sexual relations with another woman

despite being married to his wife" is "limited to the conduct of the former president in his personal life" and "cannot be found to be damaging to the social reputation of the plaintiff company," referring only to the fact that the former president's attempts to engage in sexual relations occurred "outside" the company. It is indisputable that mentioning a former president's conduct outside the company does not constitute defamation against the company. Subject Tweets 1 and 2 in this case are outside the scope of the abovementioned ruling because they are directed at Applicant itself, stating that the company's representative or management is engaging in inappropriate conduct "within" the company and that Applicant is allowing such conduct to continue. Nakazawa Decl. ¶ 14.

Subject Tweet 3 excerpted a release from Bain Capital regarding its investment in Applicant. It also said that investing in Applicant demonstrates a lack the common sense to distinguish between good and bad, which diminishes Applicant's social reputation and infringes upon its honor. In this regard, Mr. Kawabata argues that Subject Tweet 3 does not infringe upon Applicant's honor because it merely mentions risks that are invariably involved in investment and does not reveal facts. However, pointing out that investing in Applicant is "not distinguishing between good and bad" or "lacks common sense" goes beyond pointing out the existence of risk. *Id.* ¶ 15.  This also applies to Subject Tweet 4. The tweet was a reply to Mr. Kentaro Kawabe's tweet, which mentions the names of Applicant's founder, Mr. Mitsumoto, and current CEO Mr. Sato, and states they have "entrepreneurship embracing unethical and law-evading spirits," that is, that they lack a sense of ethics and do not hesitate to engage in law-evading behavior. *Id.* ¶ 16. Subject Tweets 3 and 4 also exceed the limits of being opinions and criticism, damage Applicant's social reputation, and defaming its reputation. *Id.* ¶ 17.

Movants argue that Applicant has not successfully rebutted the moving parties' defense to the effect  that the subject tweets were in the public interest and primarily for the benefit of the public, thus excluding them from defamation charges . *Id.* ¶ 18.  For that exclusion to even possibly apply in this case, the statements contained in the tweets would have first had to be true.  Given Mr. Sato's declaration, it is clear that the statements made in Subject Tweet 1 and

2 are false. Sato Decl. ¶ 2.  Applicant is a prominent start-up company in Japan but is not a listed company, and the subject false assertions that the company's representative or management had sexual relations with multiple employees are not truthful revelations of illegality.  As such, they cannot reasonably be construed to be of public interest or to have been exclusively revealed for the benefit of the public. *Id.* ¶ 19.  The grounds for applying an exclusion from defamation on the basis of revelations of illegality arise only where the defamation occurred as a result of indicating true facts, or through expressing an opinion or criticism based on certain true facts (最高裁判所 [Supreme Court] Jun. 23, 1966, 最高裁判所民判例集 20 巻 5 号 1118 頁 [20 Supreme Court Reports (Civil Cases) 5 (1118)] (Japan); 最高裁判所 [Supreme Court] Sep. 9, 1997; 最高裁判所民事判例集 51 巻 8 号 3804 頁 [51 Supreme Court Reports (Civil Cases) 8 (3804)] (Japan)), and defamation through opinion or criticism is recognized if the opinion or commentary exceed the limits of being opinions or criticisms, such as attack on the person.  Nakazawa Decl. 2 ¶ 20.  Given that Subject Tweet 3 and 4 are beyond the scope of being opinions or criticism as described above, it is obvious that they are recognized to be defamatory. *Id.*  It is clear that  Subject Account 4 intends to attack Applicant and perceives these attacks as damaging the the company's brand image and an obstruction to its business. Sato Decl. ¶ 3, 4.

   If a foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant: (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information. *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201 at *3 (N.D. Cal. Nov. 15, 2013).

   Applicant seeks the identity of the person(s) who tweeted the Subject Tweets on the Subject Accounts and has identified the Subject Tweets by their account names, satisfying requirement (1).  Yuichi Nakazawa, Applicant's Japanese attorney, took steps to identify the author and his search revealed that the server of the person(s) who tweeted the Subject Tweets

is Twitter. Nakazawa Decl. 1 ¶ 14.  Additionally, since Japanese law does not allow a "John Doe defendant" in civil litigation, without first obtaining the information about the Subject Accounts, Applicant may not even be able to start litigation, satisfying requirement (2). *Id.* at ¶ 13.  Applicant's proposed subpoena is narrowly tailored to seek IP addresses and the information likely to identify the author of the Subject Tweets and does not seek the content of any communication, satisfying requirement (4).

Further, when a statement is found to be defamation under Japanese law, the *Highfields* test is satisfied. *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404 at *6 (N.D. Cal. Feb. 14, 2020) (denying Twitter's motion to quash a subpoena seeking to unmask an anonymous speaker); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005); *In re PGS Home Co.*, 2019 U.S. Dist. LEXIS 204520 (N.D. Cal. Nov. 25, 2019); *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975–976).  Applicant's case is distinguishable from the *Highfields* case in that Applicant has shown that there is a real evidentiary basis for the assertion that the Subject Tweets caused real harm to Applicant.  This is distinguishable from the sardonic opinion or parody requiring "the reader to make way too many inferences and way too many assumptions to support" a defamation cause of action as in *Highfields* at 979; a simple "rant" by a dissatisfied customer about the services as in *PGS Home Co.* at *15-17; and the actionably defamatory comment followed by the comedic video as in *Music Grp.* at 984-987. Applicant will have no recourse to protect itself against the harm caused by the false and defamatory statements in the Subject Tweets if the Court does not allow it to pursue the identities of the anonymous user(s) of the Subject Accounts.  As such, Applicant's need for discovery outweighs the anonymous Twitter users' interest in anonymous internet speech. Nakazawa Decl. 2 ¶ 21.

Lastly, other than the above First Amendment issue, Movants do not dispute the scope of the subpoena.  The discovery requested by Applicant is narrowly tailored and limited to the discovery materials related to the Subject Accounts through which the identity of the defendant(s) in the anticipated Japanese lawsuit could be ascertained and nothing further.

"Applicant's request is narrowly tailored as it seeks identifying information and not the content of any communication. See *In re Yasuda*, No. 19-MC-80127-TSH, 2019 WL 4933581 at *4 (N.D. Cal. Oct. 7, 2019) (finding subpoena to Twitter under § 1782 for potential defamation case in Japan satisfied First Amendment safeguards where applicant sought the IP addresses, account information and identifying information of the anonymous defendant's Twitter account to unmask their identity); *In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348 at *5 (N.D. Cal. July 25, 2019) (granting a § 1782 request to issue a subpoena for the name, address, email address, telephone number and account holder settlement information, including credit card payments and credit card company); *In re Yasuda*, 2020 WL 759404 at *6.

Therefore, Applicant's request is narrowly tailored to highly relevant information and not unduly intrusive or burdensome.

### 4.   Applicant's Discovery Request Is Not an Attempt to Circumvent Foreign Proof Restrictions or Policies.

"[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 US at 265.

Applicant is not aware of any restrictions imposed by, or any policies under, Japanese law limiting the proof-gathering proceeding in the manner proposed and for the purposes stated herein. Nakazawa Decl. 1 ¶ 15.  In the past, courts have granted 28 USC. § 1782 applications for the use in the proceedings in Japan, both civil and criminal, as well.  *Marubeni Am. Corp.* at 98; *LG Elecs. Deutschland GMBH*, *5; *Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)*, 16 F.3d 1016, 1018-1019, 1994 US App. LEXIS 2440, *3-6, 94 Cal. Daily Op. Service 1108, 94 Daily Journal DAR 1918, 28 Fed. R. Serv. 3d (Callaghan) 200 (9th Cir. Cal. 1994).

Twitter argues that the third *Intel* factor above is not satisfied because the Subject Tweets would be protected under California law.  However, as stated above, an anonymous

1    speaker may be unmasked when his statement is found to be defamation under Japanese law.

2    *In re Yasuda*, 2020 WL 759404 at *6.

3

4    **IV.       CONCLUSION**

5            For the reasons stated above, Applicant respectfully requests that the Court deny

6    Movants' motions to quash and direct Twitter to comply with the subpoena without any

7    modification.

8

9    Dated:  July 15, 2022                    Respectfully submitted,

10                                       MARSHALL SUZUKI LAW GROUP, LLP

11

12                              By: /s/ *Junji Suzuki*
                                                                              
13                                       Junji Suzuki
                                         Attorney for Applicant,
14                                       hey, inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28