UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEY, INC., <br><br>    Plaintiff, <br><br> v. <br><br> TWITTER, INC., <br><br>    Defendant. | Case No. 22-mc-80034-DMR <br><br> **ORDER DENYING MOTION TO QUASH** <br><br> Re: Dkt. No. 6 |

Petitioner hey, Inc. ("hey") filed an ex parte application pursuant to 28 U.S.C. § 1782 to obtain discovery from Respondent Twitter, Inc. ("Twitter") for use in foreign proceedings. The court granted hey's application by authorizing issuance of a subpoena to Twitter. It also gave Twitter and the interested Twitter account user(s) the opportunity to contest it. [Docket No. 3.] Twitter now moves to quash the subpoena. [Docket No. 6 (Mot.).] Twitter users John Doe 1 and John Doe 2, aka @cogitopp and @mlnk901, join Twitter's motion to quash. [Docket No. 12 (Does' Joinder).]

This matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

**I.   BACKGROUND**

hey is a start-up company that plans, develops, and operates an internet business in Japan. [Docket No. 1-1 (Nakazawa Decl., Jan. 28, 2022) ¶ 1.] Its current CEO is Yusuke Sato; its former CEO is Yusuke Mitsumoto. *Id*. at ¶ 4. hey seeks discovery in aid of a lawsuit it plans to initiate in Japan to challenge four tweets posted on Twitter in 2021 that it contends are about Sato, Mitsumoto, and hey. It claims that the tweets are defamatory and constitute unlawful business interference under Japanese law. The four tweets were posted in September and October 2021 by anonymous Twitter users using the accounts @cogitopp, @mlnk901, and @DJ_AsadaAkira. *Id*.

1  at ¶¶ 5-10.

2  hey filed an application pursuant to 28 U.S.C. § 1782 for leave to issue a subpoena to Twitter for documents identifying the user(s) of the accounts that posted the four tweets for use in an anticipated Japanese lawsuit against the individual(s). *See id*. at ¶¶ 11, 12. The court granted hey's application and ordered Twitter to serve a copy of the subpoena and the order on the users associated with the @cogitopp, @mlnk901, and @DJ_AsadaAkira accounts within 30 days of the date of service of the subpoena on Twitter. The court permitted Twitter and the users to contest the subpoena by filing a motion to quash within 30 calendar days from the date of service. [Docket No. 3.]

hey served the subpoena on Twitter on April 22, 2022. [Docket No. 6-1 (Schwartz Decl. May 23, 2022) ¶ 2.] Twitter served objections to the subpoena on May 6, 2022. *Id*. at ¶ 3, Ex. B. Twitter now moves to quash the subpoena pursuant to section 1782 and Rule 45. Does 1 and 2, the anonymous users of the accounts @cogitopp and @mlnk901, join Twitter's motion to quash. The user of the account @DJ_AsadaAkira has not appeared. hey opposes the motion.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. It provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

28 U.S.C. § 1782 provides a mechanism for seeking evidence through a district court to use in a foreign or international tribunal. It states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . The order may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

2

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts" (citation and quotations omitted)).

A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010). "However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

### III. DISCUSSION

Twitter objects to the subpoena under the fourth *Intel* discretionary factor, which examines whether the request for discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264-65; Mot. 6. Twitter argues that the information requested by the subpoena "implicates anonymous speech" which is protected by the First Amendment to the U.S. Constitution, and therefore the

3

court must analyze hey's section 1782 request under the test articulated in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005). Mot. 7. The *Highfields* test requires a moving party to "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm" to the plaintiff by submitting "competent evidence" that "support[s] a finding of each fact that is essential to a given cause of action." If the party seeking discovery satisfies its burden at the first step, the court then balances the harms to each party. *Highfields*, 385 F. Supp. 2d at 975-76 (emphasis removed). Twitter and Does 1 and 2 contend that hey has not satisfied its burden at the first step of the *Highfields* test. Mot. 8; Does' Joinder 2-5.

Relatedly, Twitter also challenges the subpoena under the third *Intel* discretionary factor, arguing that the subpoena "conceals an attempt to circumvent the policies of the United States," namely, the First Amendment, and should be quashed on that basis. Mot. 14 (quotation marks and citation omitted).

hey opposes the motion to quash on the grounds that its application satisfies both Rule 26(d)'s good cause standard that governs requests for early discovery and the *Highfields* test. Opp'n 11-13. As to the third *Intel* discretionary factor, hey contends that "an anonymous speaker may be unmasked when his statement is found to be defamation under Japanese law." *Id*. at 13-14 (citing *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *6 (N.D. Cal. Feb. 14, 2020)).

### A.     The Fourth *Intel* Factor

It is well-settled that "'foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution,' including under the First Amendment." *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)). In contrast, "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." *In re Takada*, No. 22-mc-80221-VKD, 2023 WL 1442844, at *3 (N.D. Cal. Feb. 1, 2023) (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013)). Recent opinions issued by courts in this district have concluded that where the record does not indicate that anonymous speakers are U.S. citizens and thus possess First Amendment rights, section 1782 applicants need not satisfy *Highfields*'s "real evidentiary

4

basis" standard. *See Zuru*, 614 F. Supp. 3d at 706-08[1]; *Takada*, 2023 WL 1442844, at *3-4 (holding that "the Court is not persuaded that [applicant's] subpoena implicates the First Amendment" where there was "no reason to believe that the anonymous poster is a U.S. citizen" and declining to apply *Highfields*); *Takagi v. Twitter, Inc.*, No. 22-MC-80240-VKD, 2023 WL 1442893, at *3-4 (N.D. Cal. Feb. 1, 2023) (same).

In this case, as in *Zuru*, *Takada*, and *Takagi*, no evidence suggests that the anonymous speakers are U.S. citizens entitled to First Amendment protections. The tweets are in Japanese and are directed at Japanese individuals and a Japanese company. *See Takada*, 2023 WL 1442844, at *3 (postings and comments were in Japanese and were not "directed at the United States or anyone residing in U.S. territory"); *Takagi*, 2023 WL 1442893, at *3 ("[t]he reviews were written in Japanese and directed at a Japanese business"). Further, Does 1 and 2, the users of the @cogitopp and @mlnk901 accounts, submitted declarations in support of Twitter's motion to quash. Both state that they reside in Japan but neither asserts that they are a U.S. citizen. [Docket Nos. 12-1 (Doe 1 Decl. June 24, 2022) ¶ 2; 12-2 (Doe 2 Decl. June 24, 2022) ¶ 2.] The user of the @DJ_AsadaAkira account has not appeared in these proceedings, and Twitter, which has a "means to communicate with the holder of the account," offers no evidence or argument that they are a U.S. citizen. *See Takagi*, 2023 WL 1442893, at *4. Therefore, *Highfields* does not apply.

The court acknowledges it has previously held that a section 1782 applicant seeking discovery to unmask an anonymous speaker must satisfy the *Highfields* test in order to defeat a motion to quash a subpoena under *Intel*'s fourth discretionary factor. *See Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *4-5 (N.D. Cal. Sept. 9, 2021) (granting motion to quash where section 1782 application failed to satisfy two of the four good cause requirements and the first part of the *Highfields* test). In *Tokyo University*, the court wrongly assumed without analysis that the speech at issue was entitled to First Amendment

---

[1] As *Zuru* observed, "there's good reason to tread lightly in applying U.S. free-speech principles abroad. Our country's commitment to free speech isn't universally shared; and even in other countries that protect free speech, a different balance is often struck . . . " 614 F. Supp. 3d at 707.

protection.²

Having considered the limits of the First Amendment's reach, the reasoning of *Zuru*, *Takada*, and *Takagi*, and the current evidentiary record, the court declines to require hey to satisfy the *Highfields* test. It now turns to whether hey must satisfy Rule 26(d)'s good cause standard.

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). "Courts within the Ninth Circuit generally use a 'good cause' standard to determine whether to permit [early] discovery" under Rule 26(d)(1), which provides that courts may authorize discovery before the Rule 26(f) conference. *OpenMind Sols., Inc. v. Does 1-39*, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing cases). Courts consider four factors in assessing good cause:

> [Whether] (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*OpenMind*, 2011 WL 4715200, at *2 (citing *Columbia*, 185 F.R.D. at 578-80).

In *Takada*, the court questioned the proposition that section 1782 applicants must show "good cause" for the discovery. It found that such a requirement "does not have clear support in the language of" section 1782 itself. 2023 WL 1442844, at *5. In so ruling, *Takada* noted that in

---

² The court held that the challenged speech, which was "anonymous criticism of" the section 1782 applicant, fell "into the category of commercial speech" justifying application of the *Highfields* test. *Tokyo University*, 2021 WL 4124216, at *4 (citing cases applying *Highfields* in section 1782 applications challenging commercial speech); *see In re Anonymous Online Speakers*, 661 F.3d 1168, 1173, 1177 (9th Cir. 2011) (holding that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment" and suggesting that courts focus on "the nature of the speech" when choosing the proper standard "by which to balance the rights of anonymous speakers").

6

*Intel,* the Supreme Court examined section 1782(a)'s instruction that a district court "may prescribe the practice and procedure" for taking discovery, which may be based on foreign law, the rules of the international tribunal, or if not otherwise prescribed, in accordance with the Federal Rules of Civil Procedure. *Intel* stated that this language provides "'a 'mode-of-proof-taking instruction' that 'imposes *no substantive limitation on the discovery to be had*.'" *Id*. at *5 (emphasis added) (quoting *Intel*, 542 U.S. at 260 n.11).[3]

Ultimately, the court in *Takada* declined to impose a "good cause" standard. It also rejected the moving party's argument that the court should apply a "plausibility" standard derived from *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court reasoned that it was "reluctant to endorse a standard for exercising discretion [under section 1782] that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that seems ill-suited to an application for discovery in aid of a foreign proceeding that is within reasonable contemplation but not yet filed." *Id*. at *6. It concluded that "at a minimum, a district court can require an applicant to describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery [sought] will aid prosecution of that proceeding." *Id*. *See also Takagi*, 2023 WL 1442893, at *6 (same).

The court finds the reasoning of *Takada* persuasive and adopts it here.[4] In this case, hey challenges four tweets by anonymous users of three Twitter accounts. First, on September 10, 2021, @cogitopp tweeted that "the top of . . . company H has slept with so many employees back when he was at Frea○Out. And apparently, he hasn't changed even at . . . H." [Docket Nos. 1-2 (Reynolds Decl. Jan. 29, 2022) ¶¶ 2, 3, Exs. A (tweets in Japanese), B (English translation) (Tweet 1); 12-4 (Katsurada Decl. June 24, 2022) ¶ 5.][5] @mlnk901 retweeted Tweet 1 and added:

---

[3] *Takada* also took note of the Supreme Court's suggestion that district courts may employ "the controls on discovery" under Rules 26(b) and (c) "to prevent improper discovery of trade secrets and other confidential information." 2023 WL 1442844, at *5 n.6 (citing *Intel*, 542 U.S. at 266).

[4] In *Tokyo University*, this court incorrectly reasoned that Rule 26(d) applies "[s]ince discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure." 2021 WL 4124216, at *3, 4-5 (applying good cause standard).

[5] Does 1 and 2 dispute the accuracy of hey's English translation of Tweet 1 by @cogitopp and object to it on that basis. *See* Katsurada Decl. ¶ 5; Does' Joinder 5. This order uses the

> When a friend who works for a fund asked me about a certain company H, I told him there are some shady stuff lurking in multiple areas other than business potential and track record. He seemed to have decided not to be involved with the company after also personally feeling it risky. And the tequila incident happened sometime after that. I guess his decision turned out to be a good one.

Reynolds Decl. Exs. A, B (Tweet 2).[6]

hey asserts that Tweets 1 and 2 are discussing hey. According to Yuichi Nakazawa, an attorney for hey, the "tequila incident" referenced in Tweet 2 was "a notable event" involving former CEO Mitsumoto, who "played a 'tequila game' with a female in Tokyo" who later died. Nakazawa Decl. ¶ 5. Current CEO Sato is a co-founder of a company named FreakOut, Inc. Nakazawa contends that the tweets' mention of the "tequila incident" and references to "company H" and "Frea○Out" make clear that these tweets are about hey. *Id*.

On September 26, 2021, @mlnk901 posted a tweet responding to a press release announcing that Bain Capital had invested in hey:

> My impression of Ba○n Capital is that they are a group of super-talented people and post excellent results, but I don't understand why they would invest on hey while being aware of the risks. I know my acquaintances must be very intelligent and have enough common sense to judge between wight [sic] and wrong, but apparently there seem to be someone not like that.

Reynolds Decl. ¶¶ 2, 5, Exs. E (tweet in Japanese), F (English translation) (Tweet 3).

Finally, on October 27, 2021, @DJ_AsadaAkira tweeted about Mitsumoto and Sato:

> I believe entrepreneurship embracing unethical and law-evading spirits such as Yusuke Mitsumoto and supporters like . . . Yusuke Sato in the entrepreneurial community should be criticized first to purge out from the community before making political statements. What do you think?

Reynolds Decl. ¶¶ 2, 6, Exs. G (tweet in Japanese), H (English translation) (Tweet 4).

Nakazawa asserts that Tweets 1 and 2 by @cogitopp and @mlnk901 "contain false factual statements that . . . Sato had a sexual relationship with multiple employees immorally, and

---

undisputed portions of Tweet 1 and otherwise denies the objection.

[6] Twitter challenges the order of the first two challenged tweets, arguing that Tweet 1 is actually a comment added to a retweet of Tweet 2. Mot. 4. Resolution of this dispute is not material to the outcome of this motion.

8

constitute defamation" under Japanese law as to Sato and hey, given what he describes as a "strong nexus" between hey and Sato's reputation. Nakazawa Decl. ¶¶ 8, 10. Sato submits a declaration in which he states that the allegation that he "had sexual relations with multiple employees when [he] was at FreakOut and [hey] . . . is entirely false." [Docket No. 16-2 (Sato Decl. July 13, 2022) ¶ 2.]

Nakazawa avers that Tweets 3 and 4 by @mlnk901 and @DJ_AsadaAkira also constitute defamation under Japanese law "as they diminish the objective social evaluation of [hey's] morality, reputation and trustworthiness." Nakazawa Decl. ¶ 9. Nakazawa states an opinion that the four tweets "were tweeted for harassment purposes, and constitute defamation and unlawful business interference against" hey under Japanese law. *Id.* at ¶ 10.

Twitter disputes the viability of hey's anticipated claims for defamation and unlawful business interference.[7] It submits a declaration by a Japanese lawyer, Yutaro Kawabata, who asserts that when evaluating defamation claims under Japanese law, Japanese courts consider whether the statements at issue "are specific enough for an ordinary reader to identify that they are about the victim" and whether they "harmed the victim's social reputation." [Docket No. 6-2 (Kawabata Decl. May 23, 2022) ¶ 8(a), (b).] According to Kawabata, "an ordinary reader cannot identify" that the "company H" referenced in Tweets 1 and 2 is hey because they lack details connecting the tweets to hey. *Id.* at ¶¶ 14-17. Kawabata further disputes whether Tweets 1 and 2 could be "found to have harmed" hey's social reputation. *Id.* at ¶ 18. Kawabata opines that the statement about hey in Tweet 3 is "extremely abstract and indirect" and is not defamatory because it "cannot damage [hey's] social reputation," and that the statement "unethical and law-evading" in Tweet 4 is "extremely abstract" and is not directed to hey. Accordingly, Kawabata asserts, there is no basis to conclude that Tweet 4 damages hey's social reputation. *Id.* at ¶¶ 19, 21. Further, Kawabata argues that even if a court found the statements in the four tweets to be

---

[7] Twitter makes a number of objections to Nakazawa's declaration in support of hey's section 1782 application. Mot. 24-25. The objections essentially boil down to challenges to Nakazawa's legal opinions about the tweets. However, as discussed in this opinion, the court declines to address the merits of hey's anticipated defamation claims and does not treat any of Nakazawa's statements or opinions as established fact. Accordingly, the objections are denied.

defamatory, they may not be unlawful if the statements are matters of public interest or benefit the public, or if the statements are true. *Id*. at ¶ 23. Kawabata also states an opinion that hey has not substantiated any claim that the tweets interfered with its business. *Id*. at ¶ 25.

John Does 1 and 2 submit a declaration by a Japanese lawyer, Tomohiro Kanda, regarding the viability of any claims challenging Tweets 1 and 2. [*See* Docket No. 12-3 (Kanda Decl. June 24, 2022).] In Kanda's opinion, hey will be unable to sue for defamation under Japanese law based on the statement in Tweet 1 because it did not "lower the social reputation of Sato" or hey. *Id*. at ¶¶ 7, 8. Kanda also asserts that even if @cogitopp's statement that "the top of . . . company H has slept with so many employees back when he was at Frea○Out" and "hasn't changed even at . . . company H" is defamatory, only Sato was defamed, not hey, and that there may be reason to believe the statement is true and thus would not be unlawful. *Id*. at ¶¶ 6, 9.[8][9]

hey submitted a declaration in which Nakazawa responds to Kawabata's statements about whether the tweets are defamatory. [Docket No. 16-1 (2d Nakazawa Decl. July 11, 2022).] Nakazawa explains the bases for hey's contentions that the tweets are about hey; damage hey's "social reputation and infringe[ ] its honor"; "exceed the limits of being opinions and criticism"; "defame its reputation"; and are false. *Id*. at ¶¶ 8-20.

Ultimately, the parties offer competing opinions about whether the tweets at issue are actionable under Japanese defamation law. However, Twitter and the Does have not persuaded the court that hey's anticipated lawsuit "is pretextual or intended solely to harass." *See Takagi*,

---

[8] Citing Kanda's opinion that the statement arguably defamed only Sato, and not hey, Does 1 and 2 argue that hey's section 1782 application does not meet the statutory requirement that hey be an "interested person" for purposes of the foreign proceeding. Does' Joinder 3. Does 1 and 1 suggest that only a putative plaintiff may be an "interested person." *See id*. But the Supreme Court held in *Intel* that "[t]he text of § 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant.'" 542 U.S. at 256. Moreover, hey's attorney, Nakazawa, contends that the statement that "the top of company H" has had "sexual relations with multiple employees" refers to conduct that "is inappropriate and constitutes sexual harassment" and is "damaging to [hey's] social reputation and infringes its honor." Nakazawa Decl. ¶ 13. The court concludes that hey's application satisfies the "interested person" requirement of section 1782.

[9] Kanda also offers an opinion about a statement in one of the tweets, "[h]e was particularly aggressive." Kanda Decl. ¶ 11. However, that statement appears in a tweet in response to Tweets 1 and 2 and did not form the basis for hey's section 1782 application. *See* Reynolds Decl. ¶ 3, Ex. B.

10

1  2023 WL 1442893, at *7. The court is satisfied that hey has adequately "describe[d] the legal and
2  factual bases for [its] contemplated foreign legal proceeding" and explained how the discovery it
3  seeks—information identifying the users of the accounts—"will aid prosecution of that
4  proceeding." *See id*. at *6. There is no dispute that hey "identified the Twitter user(s) with
5  sufficient specificity, explained why [it] requires discovery from Twitter to locate and identify the
6  Twitter user(s), and demonstrated that Twitter likely has the identifying information [it] needs."
7  *Id*. at *8 n.6. A Japanese court will determine the merits of hey's future action. Accordingly, the
8  court denies Twitter's motion to quash the subpoena under the fourth *Intel* factor.

### B. The Third *Intel* Factor

Twitter also challenges the subpoena under the third *Intel* discretionary factor, which examines whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265; Mot. 14. According to Twitter, the tweets at issue are not defamatory under California law. Therefore, it argues, hey's subpoena "conceals an attempt to circumvent" the United States's "policy of ensuring the protection of First Amendment rights," citing *In re Planning & Development of Education, Inc.*, No. 21-MC-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022). *Id*. at 14-15. The court in *In re Planning* did not quash a subpoena issued under section 1782 on this ground; rather, in granting a section 1782 application, it observed in a footnote that the third *Intel* factor "may . . . weigh against granting an application that conceals an attempt to contravene the First Amendment's purpose without justification." 2022 WL 228307, at *4 n.3. It noted that "[e]ven where the speakers appear to be foreign citizens outside U.S. territory who do not possess rights under the U.S. Constitution, the principles underlying the First Amendment may counsel a court of the United States against exercising its discretion to aid in punishing speech that would be protected in this country." *Id*. (internal quotation marks and citation omitted). This court is not persuaded by *In re Planning* because it assumed, just as this court incorrectly assumed in *In re Tokyo University*, that the challenged speech was entitled to First Amendment protection.

Twitter's argument boils down to another attempt to apply the First Amendment to these

11

proceedings, even though it has not established that the speakers possess First Amendment protections. There is also no suggestion that Twitter's compliance with the subpoena or hey's anticipated action for defamation in Japan "will lead to a violation of fundamental human rights," which could support a different outcome. *See Takagi*, 2023 WL 1442893, at *4 n.4 (citation omitted).

As the court in *Takagi* observed, "the only clear nationwide policy that the United States has articulated with respect to discovery in aid of foreign proceedings is the policy embodied in 28 U.S.C. § 1782, and that policy is to promote efficient assistance to participants in international litigation and to encourage foreign courts to provide reciprocal assistance." 2023 WL 1442893, at *7. Enforcing hey's subpoena supports this policy, and Twitter has not identified any other applicable United States policy that the subpoena would circumvent. The court denies the motion to quash to the extent it is based on the third *Intel* factor.

## IV. CONCLUSION

For the foregoing reasons, the motion to quash is denied. Twitter shall produce documents responsive to hey's subpoena within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 6, 2023



Donna M. Ryu
United States Magistrate Judge

12